**Janet ROGERS, Appellant,**

v.

**Alexander WILHELM–OLSEN and Thomas Wilhelm–Olsen, Appellees.**

**No. 86–CA–2951–MR.**

Court of Appeals of Kentucky.

April 1, 1988.

Rehearing Denied May 6, 1988.

Mary K. Molloy, Robinson, Arnzen, Parry & Wentz, Covington, for appellant.

Thomas A. Sweeney, Lange, Quill & Powers, P.S.C., Newport, for appellees.

Before COMBS, CLAYTON and DYCHE, JJ.

COMBS, Judge.

On October 10, 1984, appellant, with her two small children, was travelling west on Memorial Parkway near the intersection of Taylor Avenue outside of Newport, in Campbell County. At that time and place appellee, Alexander Wilhelm–Olsen, age 17, was driving his father's automobile which was headed east on the parkway towards Ft. Thomas. The roadway curves significantly where the parties were travelling. As the vehicles approached the curve, Alexander's vehicle crossed the centerline and collided head on with appellant's car. According to the investigating officer's report, he observed 170 feet of skid marks from appellee's vehicle on appellant's side of the road. Counsel for appellees admitted, and the jury so found, that Alexander had violated several statutory duties. Appellant moved for a directed verdict on the issue of liability but the trial court overruled her motion and proceeded to instruct the jury. The jury returned a verdict in favor of the appellees. Thus this appeal.

Appellant raises two issues on appeal. First, she argues that the denial of her motion for directed verdict on the issue of the "blackout" defense was erroneous. Second, she argues that the court's instruction to the jury on the "blackout" defense was improper.

The evidence showed that Alexander had experienced a similar blackout approximately nine months before the accident. He was home watching the television in a reclined position. He rose, and for a matter of seconds his peripheral vision became fuzzy and his frontal vision became snowy. He told no one about the episode.

Immediately after the accident Alexander stated that he had not lost consciousness, and complained only of back pain. Alexander's treating physician, Dr. Robert

Sopko, testified that Alexander also stated to him that he had not lost consciousness during the accident. Dr. Sopko also testified that Alexander had reported a number of episodes of dazed feelings or dizziness dating back five years. A neurologist was consulted and he noted that Alexander's episodes occur when he stands up quickly and at other times.

Alexander denied ever giving such a history of his problem of dizziness and blurred vision, and admitted to only the one previous episode at home.

Alexander's mother testified that she never had any knowledge of her son's condition. She was with him at the hospital eleven continuous hours immediately following the accident, and she said that he spent most of that time sleeping, having been given an injection of demerol.

Dr. Sopko noted on the hospital records that Alexander was drowsy due to the demerol, and that a further history would be taken later. Alexander was hospitalized for a week.

Alexander was diagnosed as suffering from conditions known as mitral valve prolapse and orthostatic hypotension. Dizziness and blurred vision are symptomatic of these conditions. This diagnosis was the first medical knowledge ascertained about Alexander's conditions.

The question of the "blackout" defense in negligent automobile collision cases in Kentucky is presented to this Court on first impression.[1] The "blackout" defense adopted by some other jurisdictions amounts to a complete defense against negligence. It says that where the driver of a motor vehicle suddenly becomes physically or mentally incapacitated without warning, he is not liable for injury resulting from the operation of the vehicle while so incapacitated. However, once a *prima facie* case of negligence has been made against the defendant he must demonstrate that the sudden illness or incapacity could not have been anticipated or foreseen. *See*

*e.g.: Lutzkovitz v. Murray*, Del., 339 A.2d 64, 93 A.L.R.3d 321 (1975).

The "sudden incapacity" could include actual loss of consciousness, dizziness, temporary loss of vision such as experienced by Alexander, epileptic seizure, heart attack and stroke, and the like. All are commonly subsumed under the term "blackout" defense.

■ We join our many sister jurisdictions today by adopting the "blackout" defense. Where a defendant demonstrates that he suddenly became incapacitated while driving, and the ensuing accident was a result thereof, and further demonstrates that the sudden incapacity was not reasonably foreseeable, he shall have a defense to any liability that would otherwise arise from the accident.

■ The defense is unavailable where the defendant was put on notice of facts sufficient to cause an ordinary and reasonable person to anticipate that his or her driving might likely lead to the injury of others. The defense is neither available if at the time of the accident the incapacitated driver was violating a statutory duty such as to refrain from driving while intoxicated, or to drive within the posted speed limit.

■ This is an affirmative defense which must be specially pleaded. Once the court is satisfied that the defendant had produced sufficient evidence of the defense to withstand a peremptory verdict, the question of liability thereon is a factual one for the jury to decide.

■ However, the jury seems to have determined that Alexander was operating the vehicle at an unreasonable speed, and in an otherwise negligent manner. The instructions and jury's finding on this question are somewhat ambiguous. If Alexander was in violation of the speeding at the time of the accident then the "blackout" defense is unavailable to him.

---

**1.** *Smith v. Commonwealth*, Ky., 268 S.W.2d 937 (1954), discusses the defense in a criminal con-
text.

We therefore reverse the judgment of the trial court and remand this cause of action for a new trial on the issues of liability and damages.

All concur.