DOROTHY STORJOHN, APPELLANT, V. WILLIAM J. FAY, APPELLEE.
519 N.W.2d 521

Filed July 22, 1994.    No. S-92-1123.

Thomas A. Wagoner for appellant.

Kenneth H. Elson for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

HASTINGS, C.J.

Plaintiff Dorothy Storjohn appeals from a jury verdict and judgment in favor of defendant William J. Fay. Her sole consolidated assignment of error is that the district court erred in giving a jury instruction on unavoidable accident.

In an appeal based on the claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *McDermott v. Platte Cty. Ag. Socy.*, 245 Neb. 698, 515 N.W.2d 121 (1994); *Vacanti v. Master Electronics Corp.*, 245 Neb. 586, 514 N.W.2d 319 (1994); *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994).

The proper method of presenting a case to a jury in its instructions is by a clear and concise statement by the trial court of the issues which find support in the evidence. *Wilson v. Misko*, 244 Neb. 526, 508 N.W.2d 238 (1993); *Krehnke v. Farmers Union Co-Op. Assn.*, 199 Neb. 632, 260 N.W.2d 601 (1977).

An instruction which misstates the issues or defenses and has a tendency to mislead the jury is erroneous. *Wilson, supra*; *Omaha Mining Co. v. First Nat. Bank*, 226 Neb. 743, 415 N.W.2d 111 (1987).

On the evening of October 24, 1987, at approximately 7 p.m., the plaintiff was a passenger in the family pickup truck being driven by her daughter, Linda. While northbound on Elm Street in Grand Island, their vehicle was involved in a head-on collision when a southbound vehicle driven by the defendant entered the northbound lane. The plaintiff suffered personal injuries.

The plaintiff brought an action against the defendant alleging that the collision was caused by the defendant's carelessness, negligence, and recklessness in failing to yield the

right-of-way to the vehicle being operated by the plaintiff's driver. In addition, the plaintiff alleges that the defendant failed to maintain a proper lookout and failed to keep his vehicle under proper control. In his answer, the defendant denied any negligence and pled that the collision was the result of an unavoidable accident.

The defendant testified that in about 1968 or 1969, he was told that he probably had epilepsy and had been taking medication ever since. The defendant further testified that 15 years prior to the accident, he had an attack while driving down the highway. He stated that since the time of that attack, he had never passed out while driving a car; however, he had passed out at work. According to the defendant, he told a police officer after the accident that he did not remember what had happened and that he was epileptic and must have blacked out.

Over an objection by the plaintiff, the district court gave the jury an instruction on the defense of unavoidable accident. The pertinent portion of instruction No. 2 given by the court is as follows:

> In defense to the plaintiff's claim the defendant claims that the collision between the vehicles was a result of an unavoidable accident. If you find from the evidence before you that the defendant was rendered incapacitated by a sudden and unanticipated illness and that such illness causing the incapacity was the proximate cause of the accident, then the defendant was not negligent and your verdict should be for the defendant. A sudden and unanticipated illness must be one defendant did not know of or should not have known of the fact that he might be subject to such illness. If the defendant had such knowledge or should have had such knowledge of the illness which caused the incapacitation then the defendant is required to take more precautions under such circumstances than persons not subject to such illness. If you find that defendant failed to act as a reasonably prudent person under the circumstances and with such knowledge, and that such failure was a proximate cause of the accident then your verdict should be for the plaintiff and against the defendant.

The jury returned a verdict for the defendant.

The plaintiff argues that the defendant failed to meet his burden to establish the requisite elements of an unavoidable accident defense. The plaintiff's argument is based on two assertions: one, that the defendant failed to present expert testimony regarding his claim of epilepsy and the causative link between the claimed epilepsy and his loss of consciousness, and two, that the defendant failed to present evidence that his loss of consciousness was not foreseeable.

This court has held in several cases, most recently in *Maloney v. Kaminski*, 220 Neb. 55, 368 N.W.2d 447 (1985), that where, as in the present case, a jury is properly instructed concerning the plaintiff's burden to prove that the defendant's negligence was the proximate cause of the injury, it is ordinarily not error to give or refuse to give an instruction on unavoidable accident. See, also, *Schmidt v. Johnson*, 184 Neb. 643, 171 N.W.2d 64 (1969). However, this court has stated that it is error to give an unavoidable accident instruction where there is no evidence in the record to give legal support to the defense that the accident was unavoidable. *Owen, Administrator v. Moore*, 166 Neb. 226, 88 N.W.2d 759 (1958).

The unavoidable accident doctrine is well established in Nebraska and has been defined by this court as an unexpected catastrophe which occurs without any of the parties thereto being to blame for it. *Id.*; *Wright v. Lincoln City Lines, Inc.*, 163 Neb. 679, 81 N.W.2d 170 (1957). In his answer, the defendant alleged that the accident was unavoidable. However, from the record and the argument of counsel it is clear that the defendant has not based his defense upon an unavoidable accident in the ordinary negative sense where all parties prove themselves to be free from negligence; but, rather, he has characterized a sudden loss of consciousness defense as analogous to an unavoidable accident and raised it as an affirmative defense. This court has not considered whether, as in the present case, a loss of consciousness constitutes an unavoidable accident and thereby a defense to an action based on negligence.

The rationale behind a loss of consciousness defense is that where a driver was suddenly deprived of his senses by "blacking

out," he could not comprehend the nature and quality of his acts. *Moore v. Presnell*, 38 Md. App. 243, 379 A.2d 1246 (1977). The majority of courts in other jurisdictions which have addressed the defense have recognized that a sudden or momentary loss of consciousness while driving is a complete defense to an action based on negligence if such a loss of consciousness was not foreseeable. *Rogers v. Wilhelm-Olsen*, 748 S.W.2d 671 (Ky. App. 1988); *Brannon v. Shelter Mut. Ins. Co.*, 507 So. 2d 194 (La. 1987); *Knight v. Miller*, 503 So. 2d 120 (La. App. 1987); *Goodrich v. Blair*, 132 Ariz. 459, 646 P.2d 890 (Ariz. App. 1982); *Freese v. Lemmon*, 267 N.W.2d 680 (Iowa 1978); *Moore, supra*; *Lutzkovitz v. Murray*, 339 A.2d 64 (Del. 1975); *Reliance Insurance Company v. Dickens*, 279 So. 2d 234 (La. 1973); *Holcomb v. Miller*, 149 Ind. App. 46, 269 N.E.2d 885 (1971); *Wallace v. Johnson*, 11 N.C. App. 703, 182 S.E.2d 193 (1971); *van der Hout v. Johnson*, 251 Or. 435, 446 P.2d 99 (1968); *Watts v. Smith*, 226 A.2d 160 (D.C. App. 1967); *Freifield v. Hennessy*, 353 F.2d 97 (3d Cir. 1965); *Malcolm v. Patrick*, 147 So. 2d 188 (Fla. App. 1962); *Eleason v. Western Casualty & Surety Co.*, 254 Wis. 134, 35 N.W.2d 301 (1948). An exception to this general rule exists where a person knows that he is suffering from an illness which will likely cause his loss of consciousness. *Moore, supra.* Accord, *Rogers, supra*; *Knight, supra*; *Goodrich, supra*; *Lutzkovitz, supra*; *Reliance Insurance Company, supra*; *Freifield, supra.*

These courts generally hold that a loss of consciousness defense is an affirmative defense and that where, as in the present case, the plaintiff has established a prima facie case of negligence, the burden of proof shifts to the defendant to establish the loss of consciousness defense. *Rogers, supra.* See, also, *Brannon, supra*; *Knight, supra*; *Goodrich, supra*; *Moore, supra*; *Lutzkovitz, supra*; *Reliance Insurance Company, supra*; *Holcomb, supra*; *Wallace, supra*; *Freifield, supra*; *Malcolm, supra.* But see, *Myers v. Sutton*, 213 Va. 59, 189 S.E.2d 336 (1972) (court stated that the burden of proof in a negligence case never shifts, and where the plaintiff makes out a prima facie case, it is the defendant's duty to go forward with the evidence); *Tropical Exterminators, Inc. v. Murray*, 171 So. 2d 432 (Fla. App. 1965), *cert. denied* 177 So. 2d 475 (La.) (where

the court held that a sudden loss of consciousness was not an affirmative defense, since evidence of such a loss goes to the general issue of negligence).

Where a sudden loss of consciousness is an affirmative defense, a defendant's burden is twofold. First, the defendant must present sufficient evidence to establish that he suffered a sudden loss of consciousness prior to the accident, and second, that the loss of consciousness was not foreseeable. See, *Rogers, supra*; *Brannon, supra*; *Knight, supra*; *Goodrich, supra*; *Freese, supra*; *Moore, supra*; *Lutzkovitz, supra*; *Reliance Insurance Company, supra*; *Holcomb, supra*; *Wallace, supra*; *van der Hout, supra*; *Watts, supra*; *Freifield, supra*; *Malcolm, supra*.

The plaintiff argues that the defendant failed to establish the elements of a loss of consciousness defense and that, therefore, as a matter of law it was error for the trial court to instruct the jury on the issue of unavoidable accident.

In determining whether an issue presents a question of law for the court or a question of fact for the jury, it has been held that where the evidence is conflicting as to whether the accident was caused by the driver's sudden loss of consciousness and whether the loss of consciousness was unforeseen, it is a question of fact to be determined by the jury. *Watts, supra*. However, if the evidence points to only one reasonable conclusion, it is a question of law for the court. *Tannyhill v. Pacific Motor Trans. Co.*, 227 Cal. App. 2d 512, 38 Cal. Rptr. 774 (1964). See *Eleason, supra*. Cf. *Mackiewicz v. J.J. & Associates*, 245 Neb. 568, 514 N.W.2d 613 (1994) (as a matter of law, when reasonable persons can reach only one conclusion, questions of fact which would normally be submitted to a jury become questions of law for the court to decide).

In accord with this principle of law, this court has instructed that when a defendant pleads the affirmative defense of assumption of risk in a negligence action, the defendant has the burden to establish the elements of assumption of risk before that defense, as a question of fact, may be submitted to the jury. *McDermott v. Platte Cty. Ag. Socy.*, 245 Neb. 698, 515 N.W.2d 121 (1994); *Grote v. Meyers Land & Cattle Co.*, 240 Neb. 959, 485 N.W.2d 748 (1992).

In support of her contention, the plaintiff further argues that the defendant's loss of consciousness defense involves a subjective medical condition and that, therefore, expert testimony is necessary to establish his claim of epilepsy and the causative link between the epilepsy and his loss of consciousness.

This court has previously addressed the issue of when expert testimony is required and has drawn a distinction between objective and subjective medical conditions. In personal injury cases where injuries are objective and the conclusion to be drawn from proved basic facts does not require special technical knowledge or science, use of expert testimony is not legally necessary to establish the cause and extent of such injuries. *Eiting v. Godding*, 191 Neb. 88, 214 N.W.2d 241 (1974). In *Eno v. Watkins*, 229 Neb. 855, 429 N.W.2d 371 (1988), this court reaffirmed the principle of law that unless the character of the injury is objective, there must be expert medical testimony to establish the causation and the extent and nature of the injuries.

"Where the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science. Such a question must necessarily be determined from the testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries. . . . When symptoms from which personal injury may be inferred are subjective only, medical testimony is required. . . ."

*Eno*, 229 Neb. at 858, 429 N.W.2d at 373, quoting *Eiting, supra*. See, also, *Turek v. Saint Elizabeth Comm. Health Ctr.*, 241 Neb. 467, 488 N.W.2d 567 (1992) (where the character of an alleged injury is not objective, the cause and extent of the injury must be established by expert medical testimony). This principle of law has been recognized in workers' compensation cases as well. See, e.g., *Binkerd v. Central Transportation Co.*, 236 Neb. 350, 461 N.W.2d 87 (1990) (where the character of the injury is not objective, the cause and the extent of the injury must be established by expert testimony); *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987) (unless

the injury's nature and effect are plainly apparent, an expert opinion is required to establish the causal relationship between the incident and the injury as well as any claimed disability consequent to such injury); *Hamer v. Henry*, 215 Neb. 805, 341 N.W.2d 322 (1983) (unless the character of the injury is objective, expert testimony is required); *Mack v. Dale Electronics, Inc.*, 209 Neb. 367, 307 N.W.2d 814 (1981) (subjective condition necessitates expert testimony).

Drawing a parallel with personal injury and workers' compensation cases, the plaintiff asserts that in the present case, the defendant was required to present expert testimony to establish his epileptic condition; however, her argument is not persuasive. Although the plaintiff is correct in asserting that epilepsy is a subjective medical condition, she is mistaken in her belief that a determination of whether the defendant in fact suffered from epilepsy is controlling in this case. The focus of the inquiry is not whether the defendant's loss of consciousness was the result of an epileptic seizure, but, rather, whether the defendant did in fact lose consciousness. The objective nature and effect of "blacking out" or losing consciousness is plainly apparent, and therefore, no expert testimony is required. Cf. *Courtright v. Youngberg*, 4 Wash. App. 234, 480 P.2d 522 (1971) (where court noted that a defendant's loss of consciousness defense did not have to be supported by medical evidence in order to be submitted to the jury). Epilepsy is important in this case only as bearing on the issue of whether defendant should have foreseen that result.

The thrust of the plaintiff's remaining argument is that the defendant failed to establish the requisite elements of a loss of consciousness defense. First, we must consider whether the evidence presented established that the defendant suddenly lost consciousness prior to the accident.

UNCONSCIOUSNESS PRIOR TO THE ACCIDENT

The record reveals that the only evidence the defendant presented at trial to support his contention that he suffered a sudden loss of consciousness was his own testimony. On direct examination, the defendant was asked to recall the events prior to the accident. His testimony is set forth as follows:

Q: What happened?

A: I must have — I passed out and I hit a car, first. I don't really — don't remember, but I remember, but I hit a car and then I proceeded on down the street. The car proceeded on down the street, and so, like I said, I don't know if it was — it could have been that I didn't know where I was driving or it could have — or it could have been damage from the other car that — that caused me to run in, you know, to —.

Q: Do you recall the impact of your car with the Storjohn car?

A: Yes, but I — I — more or less that's when I woke up, after that.

The defendant further testified that he told a police officer at the scene of the accident that he did not remember anything during the accident and that he must have blacked out or passed out.

The defendant's testimony as to his recollection of events prior to the accident is inconsistent and contradictory. Without corroborating evidence, either in the form of medical testimony or other witnesses, it is difficult to reasonably infer from his testimony that he was unconscious prior to the accident. Therefore, the defendant failed to present sufficient evidence to satisfy the threshold requirement for the loss of consciousness defense, and it was error for the trial court to instruct the jury on the defense.

### FORESEEABILITY

However, even assuming that the defendant suffered a sudden loss of consciousness prior to the accident, we must examine the record to determine whether such a loss was foreseeable. In establishing the loss of consciousness defense, the issue of foreseeability is crucial. The defense is not available where a driver was put on notice of facts sufficient to cause an ordinary and reasonable person to anticipate that his or her driving might likely lead to injury to others. *Rogers v. Wilhelm-Olsen*, 748 S.W.2d 671 (Ky. App. 1988). Accord, *Knight v. Miller*, 503 So. 2d 120 (La. App. 1987); *Goodrich v. Blair*, 132 Ariz. 459, 646 P.2d 890 (Ariz. App. 1982); *Lutzkovitz*

*v. Murray*, 339 A.2d 64 (Del. 1975); *Reliance Insurance Company v. Dickens*, 279 So. 2d 234 (La. 1973); *Freifield v. Hennessy*, 353 F.2d 97 (3d Cir. 1965).

Courts have generally held that where it is undisputed that the defendant knew that he or she was subject to attacks which could result in a sudden loss of consciousness, the evidence is such that the defendant's loss of consciousness was foreseeable. See, *Eleason v. Western Casualty & Surety Co.*, 254 Wis. 134, 35 N.W.2d 301 (1948) (stating that foreseeability was established where the defendant testified he had been subject to seizures for approximately 6 years and that during these seizures he would lose consciousness for about 15 minutes); *Reliance Insurance Company, supra* (stating that it must have been foreseeable to the defendant that she would be apt to have an epileptic attack where the evidence established that she knew she had suffered from previous seizures for 8 years prior to the accident); *Knight, supra* (court reversed jury verdict for defendant and stated that defendant had not borne the burden of showing that her loss of consciousness was unforeseeable when the evidence showed she had experienced previous seizures).

When asked on direct examination when he discovered he had an epileptic condition, the defendant testified that he first started to pass out in about 1968 or 1969. He further testified that he had been under a doctor's care from the time of his first blackout to the time of the accident and had been taking Dilantin for his condition. When questioned by his counsel concerning the foreseeability of his loss of consciousness, the defendant testified as follows:

Q: Had you had any forewarning or any reason to think that day that you might be going to have an attack?

A: Not that day, no.

Q: Had you been having any problems — now, I believe you told me that 15 years before the accident you were driving down the highway one time and had an attack?

A: Yes.

Q: Since that time to this accident in October 1987, did you ever black out driving a car?

A: Not driving a car, and I drove — I blacked out at

work in different — in there and this — I said, "Well, maybe you need — maybe, you know, that mightn't" — and the doctor says, "Well, I think it's just the stress from your work that's — that that's why you have it; beings that you have driven so many miles before, why that might" — of course, I don't — I'm not saying that the doctor was right, but he said that, "I don't think that — that's probably why you don't pass out when you drive — never had a — you know, pass out driving a car."

Q: You had no reason to think you might pass out when you went down Elm Street, did you?

A: No.

Q: And your doctor said that you could drive?

A: Yes.

The defendant testified as to the medication he was taking:

Q: Mr. Fay, how long had you been taking Dilantin?

A: Ever since 1968 or nine. '69.

Q: And how often did you take it that day.

A: Well, at first, it was three times a day, and — there — and I don't remember during the accident. I think it was — it's — I take it, now, four times a day, but I — during the accident, I think it was three times a day for sure.

. . . .

Q: Okay. And you had only taken it once that day?

A: Twice. Early in the morning and at noon.

The defendant's testimony continued:

Q: And, now, your testimony is that you passed out when you were driving. Is that what you are, now, telling us?

A: Well, that was after I passed out. That's when the — they found me — I walked to my dad's to see my dad in the — on the streets, and I was already — I had already lost my license then.

Q: But you — in this, you say, "I have passed out twice in two years, once each year, and even if I wasn't driving either time," —

A: Yeah.

Q: So here you are saying that you passed out twice and hadn't been driving.

According to the defendant's own testimony, it is quite apparent that the defendant knew he was subject to seizures and as a result would lose consciousness. It is also apparent that the medication he had been taking did not control his seizures. The only evidence the defendant offers to support his contention that the seizure was not foreseeable is his belief that he would not have an attack "that day" and the fact that his doctor told him at some unstated time that he could drive. The defendant's subjective belief alone is not sufficient to establish that his loss of consciousness was not foreseeable. Furthermore, courts have found that the fact that a doctor informed a defendant that he or she could drive is not persuasive. See *Freese v. Lemmon*, 267 N.W.2d 680 (Iowa 1978).

There is no testimony in the record to support the conclusion that the driver's loss of consciousness was not reasonably foreseeable; therefore, the trial court's instruction on the defense of unavoidable accident found no support in the record.

### NEGLIGENCE AS A MATTER OF LAW

Considering the undisputed evidence establishing that the defendant knew he suffered from epileptic seizures, it is apparent that the defendant was negligent as a matter of law in driving his car. One who is ill must conform to the standard of a reasonable person under a like disability and may be negligent in driving at all when he or she knows that he or she is subject to such attacks. Restatement (Second) of Torts § 283C, comment *c*. (1965).

The Supreme Court of Wisconsin has specifically considered this issue and held that as a matter of law it is negligence for the defendant to drive a car when he knew that he was subject to seizures. *Eleason v. Western Casualty & Surety Co.*, 254 Wis. 134, 35 N.W.2d 301 (1948). The *Eleason* court noted:

> What is important is that he knew that he might be unable to control the car which he was driving. He also must have known that if he lost control of the car there was danger of someone being injured. Driving a car where people are to be met with on highways today is dangerous enough if one has complete control of his powers. When a driver knows

that he may become unconscious and lose that control at any moment, he must be held negligent in attempting to drive.

*Id*. at 134-35, 35 N.W.2d at 303. The court concluded that where the evidence established that the defendant knew he was likely at any time to become incapacitated to control a car, that evidence by itself is sufficient to make driving a car negligence. *Id*. See, also, *Goodrich v. Blair*, 132 Ariz. 459, 461, 646 P.2d 890, 892 (Ariz. App. 1982) (where the court stated, "If the defendant's health was such that a reasonably prudent man would not risk driving a car, then the defendant is negligent by merely undertaking the task of driving, regardless of subsequent events").

Although unrelated as to facts and issues, this court has spoken on the matter of the foreseeability of epileptic attacks: "The fact that Goerke has not yet had a seizure while transporting others does not require the home to risk the safety of the boys in its charge on the basis of trial and error, and thereby invite and await disastrous results." *Father Flanagan's Boys' Home v. Goerke*, 224 Neb. 731, 738, 401 N.W.2d 461, 465 (1987).

The undisputed evidence in this case establishes that the defendant knew or should have known that he was likely to lose consciousness at any time, and therefore, his driving a car under the circumstances was negligence as a matter of law.

The judgment of the trial court is reversed and the cause remanded for a new trial at which the jury shall be instructed as to the defendant's negligence as a matter or law.

REVERSED AND REMANDED FOR A NEW TRIAL.