Lisa A. McCALL, Plaintiff–Appellant,

v.

Edgar A. WILDER, Administrator of the
Estate of James Robert Ratley, Sr.,
Deceased, Defendant–Appellee.

Supreme Court of Tennessee,
at Knoxville.

Dec. 11, 1995.

Eugene B. Dixon, Koella & Dixon, Maryville, for Plaintiff/Appellant.

James S. MacDonald, Jenkins & Jenkins, Knoxville, for Defendant/Appellee.

## OPINION

WHITE, Justice.

In this negligence action seeking damages for personal injury and property damage, Lisa A. McCall, appellant, appeals from the decision of the Court of Appeals affirming the trial court's grant of summary judgment in favor of appellee, Edgar A. Wilder, administrator of the estate of James Robert Ratley, Sr., deceased. We granted plaintiff's application for permission to appeal to decide an issue not previously faced by this Court: whether, and under what circumstances, the driver of a motor vehicle who suddenly loses control of the vehicle because of physical

incapacitation caused by a known medical condition may be liable for personal injury or property damages. We hold that liability may be imposed upon the driver who knows of the medically incapacitating disorder, and who poses an unreasonable risk of harm to others by driving under circumstances such that a reasonably prudent person could foresee an accident. For the reasons set forth below, the judgment of the Court of Appeals is reversed and the case remanded for trial.

## I. Facts and Background

Plaintiff sued defendant in the Blount County General Sessions Court alleging that defendant's decedent hit plaintiff's vehicle head-on damaging the vehicle and injuring plaintiff. Following the entry of a default against defendant, the case was appealed to the Blount County Circuit Court where defendant moved for summary judgment. The basis for defendant's motion was that the accident was an unavoidable consequence of a sudden emergency created when the decedent suffered a seizure while driving. Defendant's motion was supported by the affidavit of a board certified physician practicing in the field of neurosurgery who treated decedent from the day of the accident until his death approximately three months later. According to the affidavit, a CT scan performed on the decedent after the accident revealed evidence of a brain tumor. Further evaluation and testing revealed that the tumor was located in a "very highly epileptogenic region of [the] brain." Surgery confirmed the presence of the brain tumor. The doctor opined that the tumor was present in decedent's brain on the day of the accident and that it made him susceptible to seizures. Therefore, the doctor concluded, within a reasonable degree of medical certainty, "that it is very likely that [decedent] suffered a seizure while driving his vehicle ... which in turn caused the motor vehicle accident of December 12, 1990."

In response to defendant's motion for summary judgment, plaintiff filed the affidavit of a board certified physician concentrating in the fields of pathology and laboratory medicine. The affidavit reflected the parties' stipulations that decedent had experienced seizures prior to the day of the accident and that decedent knew he had a seizure disorder which caused loss of consciousness. The affidavit concluded, based upon independent research, including a review of decedent's medical records, consultation with a neurologist, a neuropathologist, and a family practitioner, that decedent "took an unreasonable risk by driving his vehicle knowing he suffered from a seizure disorder which caused a loss of consciousness. It was certainly foreseeable that an accident might occur if [decedent] experienced a seizure while driving his vehicle."

The trial court granted defendant's motion for summary judgment. In a divided decision, the Court of Appeals affirmed. The majority of the court reasoned that the case fell within the "established principles in this state that an automobile accident resulting from an unavoidable sudden emergency, such as an epileptic seizure, negates negligence." Summary judgment was appropriate, the majority concluded, based upon the affidavit filed by defendant which established that the accident was caused by the seizure. Additionally, the majority rejected the affidavit filed by plaintiff as a legal conclusion insufficient to establish a material issue of fact.

The dissenting judge, Judge Crawford, concluded that the affidavit filed by defendant likewise contained a legal, rather than medical, opinion pertaining to the cause of the accident. The dissent viewed the issue in the case as "whether the driver acted unreasonably in that he should have foreseen the accident." Accordingly, the dissent concluded that summary judgment should have been reversed and the matter remanded for trial.

We granted plaintiff's application for permission to appeal to address the question of whether, and under what circumstances, liability may be imposed upon the driver of a car who suddenly loses control because the driver is rendered physically incapacitated by a medical disorder known to the driver.

## II. Background

### A. Principles related to Summary Judgment

Since this case is before the Court on the trial court's grant of summary judg-

ment, we are guided by well-established legal principles. We must review the record without attaching any presumption of correctness to the trial court's judgment to determine whether the absence of genuine issues of material facts entitle the movant to judgment as a matter of law. *Carvell v. Bottoms,* 900 S.W.2d 23 (Tenn.1995); *Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn.1993); *Byrd v. Hall,* 847 S.W.2d 208 (Tenn.1993). In reviewing the record, we must view the evidence in the light most favorable to the non-moving party drawing all inferences in that party's favor. If the facts and conclusions permit a reasonable person to reach only one conclusion, summary judgment should be granted. *Carvell v. Bottoms,* 900 S.W.2d at 23.

### B. Principles related to Negligence

■ Guided by these well-established principles, we turn to the controlling substantive law of negligence. A claim of negligence requires proof of the following elements: (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. *Kilpatrick v. Bryant,* 868 S.W.2d 594, 598 (Tenn.1993); *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn.1993); *McClenahan v. Cooley,* 806 S.W.2d 767, 774 (Tenn.1991). Our resolution of this case focuses on the first two elements: duty of care and breach.

■ Although the concept of duty was not part of the early English common law of torts, it has since become an essential element in all negligence cases. *Bradshaw v. Daniel,* 854 S.W.2d at 869. Properly defined, duty is the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm. *See Pittman v. Upjohn Co.,* 890 S.W.2d 425, 428 (Tenn.1994); *Nichols v. Atnip,* 844 S.W.2d 655, 661 (Tenn.App.), *perm. to appeal denied,* (Tenn.1992); W. Keeton, *Prosser and Keeton on the Law of Torts,* § 53 (5th ed. 1984). A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defen-

dant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm. *Restatement (Second) of Torts,* § 291 (1964) ("Where an act is one which a reasonable [person] would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done.").

■ Several factors must be considered in determining whether a risk is an unreasonable one. Those factors include the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct. *Restatement (Second) of Torts,* §§ 292, 293 (1964). Stated succinctly, a duty of reasonable care exists if defendant's conduct poses an unreasonable and foreseeable risk of harm to persons or property.

■ Once it is determined that defendant owed plaintiff a legal obligation to conform to a reasonable person standard of conduct, i.e., a duty—the question becomes whether defendant failed to exercise reasonable care under the circumstances, i.e., whether defendant breached the duty. "What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty." *Prosser and Keeton on the Law of Torts, supra,* at § 356.

■ In a negligence action, the standard of conduct is always the same. It is a standard of reasonable care in light of the apparent risk. *Id. See also Pittman v. Upjohn Co.,* 890 S.W.2d at 428 ("As in all cases, there is a duty to exercise reasonable care under the circumstances."); *Bradshaw v. Daniel,* 854 S.W.2d at 870 ("All persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others."). If defendant does not exercise

reasonable care, defendant has breached the duty. *Doe v. Linder Const. Co., Inc.,* 845 S.W.2d 173, 178 (Tenn.1992).

## C. Negligence in Physical Incapacity Circumstances

Perhaps surprisingly, this Court has not previously dealt with the liability of one who suddenly loses consciousness or control from a known medical disorder while driving. The Court of Appeals has faced the issue, but in only a limited number of cases, many of which are unpublished. In the earliest case, *Wishone v. Yellow Cab Co.,* 20 Tenn.App. 229, 97 S.W.2d 452, *cert. denied,* (Tenn.1936), a passenger in a taxicab was injured when the driver suddenly, and without warning, suffered an epileptic seizure. The driver had been experiencing such attacks, which caused unconsciousness, for several years prior to the accident. *Wishone v. Yellow Cab Co.,* 97 S.W.2d at 453. With little analysis, the Court of Appeals merely concluded that "there was no negligence immediately connected with the accident." *Id.*

In the only other relevant reported Tennessee decision, *Robinson v. Moore,* 512 S.W.2d 573 (Tenn.App.), *cert. denied,* (Tenn. 1974), a bus driver, who had slipped into a diabetic coma, ran a red light and caused an accident, The Court of Appeals found in favor of the employer and noted that the driver had been driving the bus for twenty-one years, had received numerous driving safety awards, and had never experienced a sudden blackout, although he knew he had diabetes and was receiving treatment for it. *Robinson v. Moore,* 512 S.W.2d at 577. Additionally, the court focused on the absence of medical proof finding that plaintiff "adduced no medical testimony to the effect that the physical diseased condition of [defendant] rendered [defendant] incompetent [to drive.]" *Id.* at 578.[1]

The unreported cases focus similarly on the substance of the medical evidence. In one, a driver experienced an epileptic seizure while driving. Though he knew he had epilepsy, the driver was under a physician's care, faithfully took his medication, had not had a seizure in the last two and one-half years, and had been advised by his physician that there was no reason to refrain from driving. A finding of no liability was affirmed.

In another case involving an accident caused by an epileptic seizure, the injured plaintiff relied on the fact that defendant had not taken her prescribed medication and had not asked her physician what the effect might be. Nonetheless, the judgment for plaintiff was reversed because plaintiff had not established that defendant's failure to take her medication had caused plaintiff's damages nor that defendant's driving with the epileptic condition was an unreasonable risk.

The court deemed the absence of medical testimony establishing a foreseeable risk of danger by driving as critical because of the impossibility of evaluating the reasonableness of the risk without a medical evaluation of the severity of the condition, the effectiveness of the medication, and the likelihood of seizures with or without medication.

Our case law, as reflected in these few opinions, is generally consistent with the approach of other jurisdictions faced with similar situations. The generally accepted approach is to accept as a defense the sudden loss of physical capacity or consciousness while driving provided that the loss of capacity or consciousness was unforeseeable. *See e.g., Walker v. Cardwell,* 348 So.2d 1049 (Ala. 1977); *Goodrich v. Blair,* 132 Ariz. 459, 646 P.2d 890 (Ct.App.1982); *Ford v. Carew & English,* 89 Cal.App.2d 199, 200 P.2d 828 (1949); *Renell v. Argonaut Liquor Co.,* 148 Colo. 154, 365 P.2d 239 (1961); *Lutzkovitz v. Murray,* 339 A.2d 64 (Del.1975); *Watts v. Smith,* 226 A.2d 160 (D.C.App.1967); *Malcolm v. Patrick,* 147 So.2d 188 (Fla.Ct.App. 1962); *Hoggatt v. Melin,* 29 Ill.App.2d 23, 172 N.E.2d 389 (1961); *Holcomb v. Miller,* 149 Ind.App. 46, 269 N.E.2d 885 (1971); *Freese v. Lemmon,* 267 N.W.2d 680 (Iowa

---

1. Interestingly, the *Robinson* court disagreed with the *Wishone* court's conclusion that there was no debatable question of the taxicab's driver's negligence because the driver had suffered seizures rendering him unconscious several years prior to the accident. *Robinson v. Moore,* 512 S.W.2d at 576 n. 1.

1978); *Rogers v. Wilhelm–Olsen,* 748 S.W.2d 671 (Ky.Ct.App.1988); *Brannon v. Shelter Mut. Ins. Co.,* 507 So.2d 194 (La.1987); *Moore v. Presnell,* 38 Md.App. 243, 379 A.2d 1246 (1977); *McGovern v. Tinglof,* 344 Mass. 114, 181 N.E.2d 573 (1962); *Soule v. Grimshaw,* 266 Mich. 117, 253 N.W. 237 (1934); *Storjohn v. Fay,* 246 Neb. 454, 519 N.W.2d 521 (1994); *Savard v. Randall,* 103 N.H. 234, 169 A.2d 276 (1961); *Wallace v. Johnson,* 11 N.C.App. 703, 182 S.E.2d 193 (1971); *Jenkins v. Morgan,* 57 Ohio App.3d 40, 566 N.E.2d 1244 (1988); *Parker v. Washington,* 421 P.2d 861 (Okla.1966); *van der Hout v. Johnson,* 251 Or. 435, 446 P.2d 99 (1968); *Howle v. PYA/Monarch, Inc.,* 288 S.C. 586, 344 S.E.2d 157 (Ct.App.1986); *Durham v. Wardlow,* 401 S.W.2d 372 (Tex.Ct.App.1966); *Witt v. Merricks,* 210 Va. 70, 168 S.E.2d 517 (1969); *Kaiser v. Suburban Trans. Sys.,* 65 Wash.2d 461, 398 P.2d 14 (1965); *Keller v. Wonn,* 140 W.Va. 860, 87 S.E.2d 453 (1955); & *Eleason v. Western Cas. & Sur. Co.,* 254 Wis. 134, 35 N.W.2d 301 (1948).

The rule recognized by these cases has been succinctly summarized as follows:

> The operator of a motor vehicle is not ordinarily chargeable with negligence because he becomes suddenly stricken by a fainting spell or loses consciousness from an unforeseen cause, and is unable to control the vehicle. In other words, fainting or momentary loss of consciousness while driving is a complete defense to an action based on negligence if such loss of consciousness was not foreseeable.

> .    .    .    .    .

> If the operator of a motor vehicle knows that he [or she] is subject to attacks in the course of which he [or she] is likely to lose consciousness, such a loss of consciousness does not constitute a defense in an action brought by a person injured as a result of the operator's conduct.

7A Am.Jur.2d *Automobiles and Highway Traffic,* § 773 (1980). *See also* Travers, Annotation, *Liability for Automobile Accident Allegedly Caused By Driver's Blackout, Sudden Unconsciousness, or the Like,* 93 A.L.R.3d 326 (1979) ("[C]ases decided under negligence theories have uniformly held that a sudden loss of consciousness while driving

is a complete defense to an action based on negligence ... if such loss of consciousness was not foreseeable."). The rule covers accidents caused by, among other incapacitating events, actual loss of consciousness, dizziness, temporary loss of vision, stroke, heart attack, or seizure.

The key to establishing the physical capacity or loss of consciousness defense is foreseeability. Consequently, the defense would be inappropriate if the driver was aware of facts sufficient to cause a reasonably prudent person to anticipate that his or her driving might likely lead to an accident. Courts differ, however, in the strictness of the approach. For example, some courts hold that any driver suffering from a medical disorder capable of producing a seizure or unconsciousness is liable, as a matter of law, for driving at all. *See Malcolm v. Patrick,* 147 So.2d 188 (Fla.Ct.App.1962); *accord Eleason v. Western Cas. & Sur. Co.,* 254 Wis. 134, 35 N.W.2d 301 (1948). Other courts recognize that such knowledge creates a question for the jury as to whether there was a breach of the standard of care. *See e.g., Lutzkovitz v. Murray,* 339 A.2d 64 (Del.1975); *Freese v. Lemmon,* 267 N.W.2d 680 (Iowa 1978); *Murphy v. Paxton,* 186 So.2d 244 (Miss.1966). Still other courts hold that the mere knowledge of past incapacitating medical episodes or a history of an incapacitating medical condition is insufficient notice to warrant a finding of negligence. *See e.g., Goodrich v. Blair,* 132 Ariz. 459, 646 P.2d 890 (1982); *Durham v. Wardlow,* 401 S.W.2d 372 (Tex. Ct.App.1966). These courts often require symptoms on the day of or immediately before the accident.

### III. Rule Established in Physical Incapacitation Cases

■ Our careful consideration of the jurisprudence of other jurisdictions and our own leads us to adopt the following rule: A sudden loss of consciousness or physical capacity experienced while driving which is not reasonably foreseeable is a defense to a negligence action. To constitute a defense, defendant must establish that the sudden loss of consciousness or physical capacity to control the vehicle was not reasonably foreseeable to

a prudent person. As a result, the defense is not available under circumstances in which defendant was made aware of facts sufficient to lead a reasonably prudent person to anticipate that driving in that condition would likely result in an accident.

In determining whether the loss of capacity or consciousness was foreseeable, pertinent, nonexclusive considerations would include: the extent of the driver's awareness or knowledge of the condition that caused the sudden incapacity; whether the driver had sought medical advice or was under a physician's care for the condition when the accident occurred; whether the driver had been prescribed, and had taken, medication for the condition; whether a sudden incapacity had previously occurred while driving; the number, frequency, extent, and duration of incapacitating episodes prior to the accident while driving and otherwise; the temporal relationship of the prior incapacitating episodes to the accident; a physician's guidance or advice regarding driving to the driver, if any; and medical opinions regarding the nature of the driver's condition, adherence to treatment, foreseeability of the incapacitation, and potential advance warnings which the driver would have experienced immediately prior to the accident. These factors, and any other relevant ones under the circumstances, would tend to establish whether the duty to exercise reasonable care was breached.

We agree with the Court of Appeals' reluctance to adopt a rule that would exclude individuals who had once suffered an incapacitating episode from ever driving again. Nonetheless, we can envision without much difficulty situations in which driving at all might constitute negligence. One who is ill or incapacitated at times may be negligent in driving at all when he or she is aware that a sudden incapacitation could likely occur at any moment. *Restatement (Second) of Torts*, § 283C, comment c (1965).[2]

## IV. Application of Rule to Facts in Present Case

Here, plaintiff contends that disputed issues of material fact exist as to whether decedent took an unreasonable risk by driving knowing that he suffered from a seizure disorder which caused loss of consciousness, and whether it was reasonably foreseeable that an accident might occur in the event he experienced a seizure while driving. In addition to the affidavit filed by plaintiff, plaintiff relies on two stipulated facts. First, plaintiff relies on the fact that decedent suffered seizures prior to the date of the accident. Second, plaintiff relies on the fact that decedent was aware that he suffered seizure disorders that caused, at times, a loss of consciousness.

Conversely, defendant contends that the fact that the accident was caused by a suddenly occurring disability negates liability as a matter of law. Specifically it is defendant's contention that the record contains no facts from which a reasonable juror could find negligence. There is no evidence that decedent was prescribed medication or that he failed to follow a physician's recommendations. Further, there is no evidence of decedent's history or frequency of incapacitation and whether any debilitating episodes had occurred while he was driving.

In light of the stipulated facts that decedent had suffered seizures prior to the accident and was aware of the medical condition causing unconsciousness, we have no difficulty concluding that a jury could find that an accident with resulting injury to others was reasonably foreseeable. Even without the stipulated facts, decedent, under the law of this state, would owe a duty to act reasonably in light of the inherent dangers associated with driving. *Whitaker v. Harmon*, 879 S.W.2d 865, 869 (Tenn.Ct.App.), *perm. to appeal denied*, (Tenn.1994); *Hale v. Rayburn*, 37 Tenn.App. 413, 264 S.W.2d 230, 232 (Tenn.Ct.App.), *cert. denied*, (Tenn.1953); *see also* 93 A.L.R.3d at 330. Unquestionably, decedent owed plaintiff a duty to act as a reasonably prudent person would act in light

**2.** "[A]n automobile driver who suddenly and quite unexpectedly suffers a heart attack does not become negligent when [the driver] loses control of [the] car and drives it in a manner which would otherwise be unreasonable; but one who knows that he [or she] is subject to such attacks may be negligent in driving at all." *Restatement of Torts*, § 283C, comment c (1965).

of the inherent dangers associated with driving and exacerbated by his known incapacitating medical condition.

 Our second inquiry is whether the duty of reasonable care was breached. We are persuaded that defendant's argument that liability is negated as a matter of law sweeps too broadly and is inconsistent with the weight of authority from other jurisdictions. Additionally, defendant's assertion that he is entitled to summary judgment because plaintiff did not establish facts from which the jury could find negligence is equally unpersuasive. To survive the summary judgment motion filed by defendant, plaintiff was obliged to demonstrate that reasonable persons might draw differing conclusions from the facts. Plaintiff was not required to prove her case by a preponderance of the evidence in order to successfully counter defendant's summary judgment motion. *Byrd v. Hall*, 847 S.W.2d at 210–211, 215. Viewing the evidence in a light most favorable to plaintiff, and drawing all reasonable inferences in her behalf, as we must, we conclude that reasonable jurors could reach different conclusions as to whether decedent was acting as a reasonably prudent person in driving at the time the accident occurred.

We base our holding not only on the stipulated facts, but also on the affidavit filed by plaintiff in which the physician opined that defendant took an unreasonable risk in driving. We recognize the very good argument that this medical opinion offered on foreseeability is actually a legal conclusion. Nonetheless, we think it is also correctly viewed as a medical opinion given by one uniquely qualified to evaluate the effect of a brain tumor on one's abilities to safely operate a vehicle. Additionally, this issue of foreseeability, recognized initially in this opinion as the key to the duty issue, is generally a question of fact for the jury, unless no reasonable person could dispute the only reasonable outcome. *McClenahan v. Cooley*, 806 S.W.2d 767, 775–76 (Tenn.1991); *City of Elizabethton v. Sluder*, 534 S.W.2d 115, 117 (Tenn.1976). This is not a case where all reasonable minds are compelled to reach one conclusion on the crucial issue of foreseeability.

 Finally, defendant's reliance on the sudden emergency doctrine is misplaced. The sudden emergency doctrine, which has now been subsumed into Tennessee's comparative fault scheme, *Eaton v. McLain*, 891 S.W.2d 587, 592 (Tenn.1995), recognizes that a person confronted with a sudden or unexpected emergency which calls for immediate action is not expected to exercise the same accuracy of judgment as one acting under normal circumstances who has time for reflection and thought before acting. *See Young v. Clark*, 814 P.2d 364, 365 (Colo. 1991); *see also Prosser and Keeton on the Law of Torts*, § 196.[3]

The doctrine no longer constitutes a defense as a matter of law but, if at issue, must be considered as a factor in the total comparative fault analysis. Accordingly, the doctrine of sudden emergency does not negate defendant's liability in the case before us as a matter of law.

Therefore, summary judgment was improper. For these reasons, the judgment of the Court below granting and affirming summary judgment for defendant is vacated. The case is remanded to the trial court for proceedings consistent with this opinion. Costs are taxed to defendant.

ANDERSON, C.J., and DROWOTA, REID and BIRCH, JJ., concur.

---

3. "[T]he basis of the rule is merely that the actor is left no time for adequate thought, or is reasonably so disturbed or excited that the actor cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such circumstances, the actor cannot reasonably be held to the same accuracy of judgment or conduct as one who has had the full opportunity to reflect, even though it later appears that the actor made the wrong decision, one which no reasonable person could possible have made after due deliberation." *Prosser and Keeton on the Law of Torts*, § 196.