**ESTATE OF Evan EMBRY,
etc., et al, Plaintiffs**

v.

**GEO TRANSPORTATION OF
INDIANA, INC., et al,
Defendants.**

**Civil Action No. 2002–172.**

United States District Court,
E.D. Kentucky,
at Covington.

Sept. 28, 2005.

Lucinda C. Shirooni, Philip Taliaferro, Taliaferro, Mehling, Shirooni, Carran & Keys, William C. Oldfield, Cobb & Oldfield, Covington, KY, for Plaintiffs.

Andrew N. Moore, Daniel E. Murner, Leslie Patterson Vose, Landrum & Shouse, Lexington, KY, for Defendants.

## OPINION

BERTELSMAN, District Judge.

This is a wrongful death action in which federal jurisdiction is based on diversity. The court previously entered an order granting plaintiffs' motion for partial summary judgment on the question of the applicability of the "blackout" defense. The court now issues its written opinion setting forth the reasoning for that ruling.

### Factual and Procedural Background

This case arises out of an automobile collision that occurred on June 6, 2002.

Norma Young, Amber Young, Heather McNay, Evan Embry, and Brandon Perry were passengers in a minivan traveling southbound on I–75 in Grant County, Kentucky. A tractor-trailer driven by defendant Kenneth Chandler was traveling in the right-hand lane of northbound I–75. Chandler was speaking with another truck driver on the CB radio, thanking the other driver for allowing Chandler to pass his truck.

Approximately 15–20 seconds after passing this other truck, Chandler's vehicle suddenly veered across the northbound lanes, across the median, and into the far southbound oncoming lanes of traffic. Chandler did not signal or apply his brakes during this time. The collision resulted in the deaths of Norma Young (age 58), Heather McNay (age 25), and Evan Embry (age 10 months). Amber Young and Brandon Perry were injured.

Upon awaking in his truck immediately after the collision, Chandler told the police that he had taken a sip of coffee from a travel mug and began to choke. He coughed up some of the coffee onto his

shirt and continued choking. Chandler said that he then developed "tunnel vision" and blacked out, and that he remembered nothing thereafter until waking. Chandler was not cited for or charged with any traffic violations as a result of the accident.

Subsequent medical examinations at the hospital ruled out any underlying neurological conditions that might explain Chandler's blackout.

This action was filed on July 12, 2002, asserting three wrongful death claims, a personal injury claim, and four loss of consortium claims against the defendants. In their answer, defendants asserted the affirmative defense that Chandler had choked on coffee which in turn caused him to black out and lose control of his vehicle.

In April 2003, Chandler underwent a neuropsychiatric examination by Dr. Robert Granacher for a total of 12 hours. Dr. Granacher concluded that his findings were consistent with "near syncope due to aspiration on coffee" as indicated in the medical records which caused Chandler to black out and lose control of his truck.

Plaintiffs thereafter filed a motion for partial summary judgment, arguing that the "blackout" defense is inapplicable to the facts of this case as a matter of law and may not be invoked by defendants to absolve them of liability for Chandler's negligence per se. Following oral argument, the court granted plaintiffs' motion.

### Analysis

Both federal and state cases "decided under negligence theories have uniformly held that a sudden loss of consciousness while driving is a complete defense to an action based on negligence or gross negligence, if such loss of consciousness was not foreseeable." Timothy E. Travers, Annotation, *Liability for Automobile Accident Allegedly Caused by Driver's Blackout, Sudden Unconsciousness, or the Like,* 93 A.L.R. 326 (1979 and Supp.2005). *See also Roman v. Estate of Gobbo,* 99 Ohio St.3d 260, 791 N.E.2d 422, 428 (2003) (noting that court's research reveals no case in U.S. rejecting the blackout defense); *McCall v. Wilder,* 913 S.W.2d 150, 154–55 (Tenn.1995) (listing numerous cases from other U.S. jurisdictions adopting blackout defense); *Storjohn v. Fay,* 246 Neb. 454, 519 N.W.2d 521, 525 (1994) (same).

"The rationale behind a loss of consciousness defense is that where a driver was suddenly deprived of his senses by 'blacking out,' he could not comprehend the nature and quality of his acts." *Storjohn,* 246 Neb. at 458–59, 519 N.W.2d 521.

Kentucky too has adopted the blackout defense to claims for negligence in automobile cases. *See Rogers v. Wilhelm–Olsen,* 748 S.W.2d 671 (1988). In *Rogers,* the court stated:

The question of the "blackout" defense in negligent automobile collision cases in Kentucky is presented to this Court on first impression. The "blackout" defense adopted by some other jurisdictions amounts to a complete defense against negligence. It says that where the driver of a motor vehicle suddenly becomes physically or mentally incapacitated without warning, he is not liable for injury resulting from the operation of the vehicle while so incapacitated. However, once a *prima facie* case of negligence has been made against the defendant he must demonstrate that the sudden illness or incapacity could not have been anticipated or foreseen.

*The "sudden incapacity" could include actual loss of consciousness, dizziness, temporary loss of vision such as experienced by [this driver], epileptic seizure, heart attack and stroke, and the like. All are commonly subsumed under the term "blackout" defense.*

We join our many sister jurisdictions today by adopting the "blackout" defense. Where a defendant demonstrates that he suddenly became incapacitated while driving, and the ensuing accident was a result thereof, and further demonstrates that the sudden incapacity was not reasonably foreseeable, he shall have a defense to any liability that would otherwise arise from the accident.

*The defense is unavailable where the defendant was put on notice of facts sufficient to cause an ordinary and reasonable person to anticipate that his or her driving might likely lead to the injury of others. The defense is neither available if at the time of the accident the incapacitated driver was violating a statutory duty* such as to refrain from driving while intoxicated, or to drive within the posted speed limit.

This is an affirmative defense which must be specially pleaded. Once the court is satisfied that the defendant had produced sufficient evidence of the defense to withstand a peremptory verdict, the question of liability thereon is a factual one for the jury to decide. . . .

If [the defendant] was . . . speeding at the time of the accident then the "blackout" defense is unavailable to him.

*Id.* at 673 (emphasis added) (citations and footnote omitted).

In the view of this court, defendants have misinterpreted the blackout defense as stated in *Rogers.*

■ There, the Kentucky court did not make all losses of consciousness a complete defense for drivers in all circumstances. To have done so would have violated the venerable Kentucky statute which requires that the "operator of any vehicle upon a highway shall operate the vehicle in a careful manner, with regard for the safety . . . of pedestrians and other vehicles upon the highway," Ky.Rev.Stat. Ann. § 189.290 (LexisNexis 1997), as well as the more specific statutory duty to "travel upon the right side of the highway whenever possible." Ky.Rev.Stat. Ann. § 189.300 (LexisNexis 1997).

■ Rather, the *Rogers* court provided a narrow defense to violation of these duties where a loss of consciousness occurs "suddenly without warning" and is "unforeseeable." *Rogers,* 748 S.W.2d at 673.

■ Further, the *Rogers* court made clear that the excusable blackout must be the sole cause of the accident. If there was other negligence, such as speeding, "then the 'blackout' defense is *unavailable* to him." *Id.* (emphasis added).[1]

■ In the instant case, the defendant driver's blackout was due to negligently drinking the coffee. Most of us have drunk thousands of cups of coffee or tea and not passed out. Under the doctrine of "res ipsa loquitur," if swallowing the coffee caused defendant to black out as he claims, we must conclude that he must have taken too big a gulp, or the coffee was too hot.[2]

1. The Kentucky statutes further recognize that heavy motor trucks are super-dangerous. *See* Ky.Rev.Stat. Ann. § 189.670 (LexisNexis 1997) (declaring it the public policy of Kentucky that heavy motor trucks "endanger the safety and lives of the traveling public").

2. *See, e.g., Banes v. Otis Elevator Co.,* 2 Fed. Appx. 461, 467 (6th Cir.2001) (noting that under Kentucky law, the doctrine of res ipsa loquitur "simply recognizes that as a matter

of common knowledge and experience [,] the very nature of an occurrence may justify an inference of negligence on the part of the person who controls the instrumentality causing the injury") (quoting *Bell & Koch, Inc. v. Stanley,* 375 S.W.2d 696, 697 (Ky.1964)). *See also Helton v. Forest Park Baptist Church,* 589 S.W.2d 217, 219 (Ky.App.1979) (setting forth elements of res ipsa loquitur and noting that the doctrine applies "where the thing shown speaks of negligence of the defendant and not

It would be a travesty to hold, as defendants urge, that where the driver of a leviathan of the highway, such as the truck in question, loses control of it by negligently drinking coffee, he and his employer should be insulated from their statutory duties.

To the court, this situation is no different than if the driver spilled the coffee in his lap and thus distracted himself. The primary focus should be on the statutory duties enacted for the safety of the public.

Therefore, for these reasons, the court holds that defendants may not invoke the blackout defense in this case, and summary judgment for plaintiffs is proper.

merely the occurrence of an accident") (citation omitted).