147 So.2d 188 (1962)
Ida Ruth MALCOLM, Appellant,
v.
James R. PATRICK, Appellee.
No. 2337.
District Court of Appeal of Florida. Second District.
August 8, 1962.
Rehearing Denied September 6, 1962.
*189 John A. Sutton of Sutton & Brown, Orlando, for appellant.
William Berson of Berson, Barnes & Inman, Orlando, for appellee.
KANNER, Acting Chief Judge.
The negligence action from which this appeal arises was brought by plaintiff, appellant here, against the defendant-appellee whose automobile, driven by his minor son, Larry, age 16, ran upon a sidewalk and struck plaintiff from behind as she was walking. The defense asserted was that the minor son suffered a lapse of consciousness or blackout which caused him to lose control of the automobile and that this loss of consciousness at the crucial time refuted the charge of negligence.
Verdict in the amount of $16,720 was returned by the jury for the plaintiff; but the trial judge, upon reconsideration entered the appealed order setting aside the jury verdict and granting motion for new trial made by defendant.[1] From the footnoted order, it appears that the premise of the court in granting the motion was that the charge concerning loss of consciousness was without evidentiary support and constituted harmful error not cured by the jury charges as a whole.
Plaintiff urges that, under a defense of loss of consciousness, it is necessary for the charge to comprehend the principle of foreseeability as an essential part of the law by which such a defense can stand.
The court is limited on the appeal to considering the propriety of the ground stated in the order for new trial and must found its decision upon a determination of whether or not the stated ground is sufficient. Section 59.07(4), Florida Statutes, F.S.A. See also Braddock v. Seaboard Air Line Railroad Company, Fla. 1955, 80 So.2d 662.
In this country, by the great weight of authority, the rule is that neither negligence nor gross negligence is chargeable *190 against the operator of a motor vehicle who, while driving, becomes suddenly stricken by a fainting spell or loss of consciousness from an unforeseen cause and is unable to control the vehicle. See Annotation, 28 A.L.R.2d 12, section 15, page 35. Thus it is indicated that a loss of consciousness while driving is a complete defense if such loss was not foreseeable. See 5A Am. Jur., Automobiles and Highway Traffic, Section 223, pages 365, 366.
Pronouncements have been made in Florida concerning a sudden loss of consciousness by a vehicle operator and its effect upon asserted negligence. In Baker v. Hausman, Fla. 1953, 68 So.2d 572, 573, the Supreme Court, in speaking of physical impairment as a defense in a negligence action, said that, "In jurisdictions where the courts have been confronted with the question they have generally held that negligence, much less gross negligence or wanton misconduct will not be imputed to one who suddenly `blacks out', faints or suffers a sudden `attack or stroke,' loses consciousness and control of his car causing injury to himself or his guest without premonition or warning of his condition." The above statement is quoted in the case of Bridges v. Speer, Fla. 1955, 79 So.2d 679, with the court going on to indicate that by the general trend of the cases the pivot upon which the question turns is knowledge of one's unfitness to drive. The court then commented, "It is not even simple negligence if one has a sudden attack, loses control of his car and causes an accident if he had no premonition or warning. In such event the very foundation of negligence  knowledge and hence foreseeability  is absent. Our cases seem to hold, however, that where one has notice or knowledge of the existence of a physical impairment which may come on suddenly and destroy his power to control an automobile, it is negligence to an extreme degree for such person to operate such vehicle." Accord: Williams v. Frohock, Fla.App. 1959, 114 So.2d 223. Hence the loss of consciousness is a good defense if there was no premonition or warning.
Since interpretation of the evidence is an issue here, the testimony will be reviewed. That which concerns the defense interposed is not in dispute. It was given by three doctors and the minor son. We summarize this testimony in some detail in order to delineate more clearly the facts concerning the physical condition of defendant's son.
A Dr. Sutter, the first physician to see Larry following the accident, testified that Larry was not able to tell all the details of the accident and could not tell him what occurred between the time he was in the road until he hit the woman, that there was a lapse of memory by Larry for a short while when he went onto the sidewalk. The boy's mother, he continued without objection, had indicated that Larry had been having some type of spells for about a year, during which times he would stare into space and would not answer any questions, then would shake himself and seem to be straightened out after about two seconds. She recalled three such attacks. Larry denied to Dr. Sutter that he had knowledge of any attacks at all except that he had dizzy spells off and on for at least a year's time. Dr. Sutter arrived at a diagnosis of petit mal epilepsy through talking with the boy himself.
Testimony of Dr. Fessenden, a psychiatrist to whom Dr. Sutter referred Larry, was that from his examination, he had been led to conclude that Larry had petit mal epilepsy. He described this ailment as a form of epileptic seizure involving a short convulsive sensation in which the patient loses consciousness for a very short period of time, varying from "flash" duration to a second or two, depending upon the individual pattern of petit mal, sometimes with warning and sometimes not. He related without objection the mother's account that for the past two years, though she did not realize anything was wrong, in speaking to Larry he would at times not answer and shortly after would give the answer. Larry's own version, said Dr. Fessenden, was that he had no knowledge of having had *191 any trouble and that he had no memory of anything between the time he was driving along the road and the time he hit the woman. In the opinion of that witness, the boy definitely has petit mal and had a petit mal seizure.
The deposition of a Dr. Gant set out that he was treating Larry Patrick at the time of the deposition in 1960 and had been treating him since September, 1958, seeing him once every two or three weeks during that time. Dr. Gant is a private medical practitioner in Tennessee, with emphasis upon the area of psychiatry. His account of Larry's report to him was that up to the time of the accident he had not had an attack. Dr. Gant responded under questioning that it was probably and likely that this was Larry's first attack, that there was nothing obtained from him pointing to a prior history of epilepsy. The seizures subsequent to the accident, said Dr. Gant, occurred one or two a day or one or two a week, according to information obtained from the boy's grandmother and admitted by Larry.
By Larry's deposition, before the day of the accident he had not had any spell, attack, loss of consciousness, or loss of memory but only a dizzy spell now and then, nothing such as this; and he had never before been treated by any physician for any attacks or blackouts or spells of that nature. When questioned as to frequency of the attacks since the accident, he replied that he had one or two additional blackout spells a week or as many as three or four a day but not as heavy as "that one," that to his knowledge he had never had any such attack preceding the automobile accident. He explained his dizzy spells prior to the time of the accident as "not really dizzy spells but you know, like you would be sitting down somewhere and stand up quick and kinder get dizzy for a minute, nothing abnormal or strange. Sometimes we all have dizzy spells and feel kinder funny sometimes, but other than that, I had nothing." He explained that there was no regularity at all but that if he had been bending over or straining or something like that and stood up quickly he might get a little bit dizzy. Larry, by his testimony, was advised following the accident not to drive an automobile, and he relinquished his driver's license.
We have indicated the prevailing rule in other jurisdictions and the rule which has been enunciated in this state. We find no case in Florida which bears factual similarity to the instant one, but we cite three cases from other state jurisdictions annotated in 28 A.L.R.2d 12, pages 40, 41, which, though not factually parallel, have an aspect of relationship in that they concern dizziness and epilepsy.
The first of these cases is Soule v. Grimshaw, 1934, 266 Mich. 117, 253 N.W. 237. The evidence in that case revealed that, just before the accident, the defendant slumped over in the automobile and became unconscious. Defendant's testimony had tended to prove he had never had a prior fainting spell, that he was not intoxicated, and he had not suffered from apoplexy nor epilepsy. Defendant admitted, however, that he had felt dizzy prior to the accident and had continued to drive on, thinking the dizziness would wear off. The court submitted the cause to the jury upon the question of negligence of defendant in continuing to drive with knowledge that a feeling of dizziness was coming over him, and a verdict for plaintiff was returned. The verdict was upheld on review.
The second extra-jurisdictional case which we cite is that of Goldman v. New York Rys. Co., 1919, 185 App.Div. 739, 173 N.Y.S. 737. In that case, a street car motorman during a routine downtown trip was not feeling well and experienced two periods of dizziness. He then fainted in his cab and caused a collision. The dizzy spells had passed away quickly. The judgment of the lower court for defendant was reversed for failure to submit the question of negligence to the jury. The cause was remanded for new trial so that it might be determined whether under those conditions and with those warnings the motorman *192 exercised reasonable care in continuing to run his car.
Finally, from the Wisconsin jurisdiction comes the case of Eleason v. Western Casualty and Surety Co., 1948, 254 Wis. 134, 35 N.W.2d 301, wherein one question before the court was whether or not defendant was negligent in operating a truck when he was subject to epileptic seizures. In that state, there was a statutory provision prohibiting the operation of a motor vehicle by an epileptic. The trial court, evidently because the driver did not know he had epilepsy, held that he was not negligent. The Supreme Court reversed, stating that the undisputed evidence was that the driver did know he was subject to spells which would render him unconscious and the fact he did not know the name of his malady was not controlling. The evidence showing that the driver knew he was likely at any time to become incapacitated to control a motor vehicle, said the court, was sufficient to render the driving of a car a negligent act as a matter of law.
Thus, in the two above cases involving dizziness, there had been no history of any such attacks prior to the day of the accident; and in the third case, the defendant did not know he had epilepsy until after the accident had occurred.
Where a plaintiff establishes a prima facie case of negligence, the burden of proof is cast upon the defendant to show the sudden physical or mental incapacity and further to show that it was unanticipatable and unforeseen. Keller v. Wonn, 1955, 140 W. Va. 860, 87 S.E.2d 453; Driver v. Brooks, 1940, 176 Va. 317, 10 S.E.2d 887; Lehman v. Haynam, 1956, 164 Ohio St. 595, 133 N.E.2d 97.
At this juncture, we interpolate that the part of the charge found in the court's order dealing with the burden of proof of this defense as previously footnoted in this opinion raises an uncertainty. It is not clear whether the defendant or the plaintiff was encumbered with the preponderance of the evidence requirement, although the law imposes the burden upon the defendant. As applied to the present case, however, if it were assumed that the burden was on the plaintiff, the defendant cannot complain, since that was to his advantage.
The positions of the parties concerning the disputed excerpt of the trial judge's charge to the jury are diametric. Defendant asserts that there is no foundation in the evidence for an instruction whereby it might be found that the driver in advance of the accident had notice, knowledge, or forewarning of illness. Conversely, it is the viewpoint of plaintiff that the charge represents a proper statement of the law and that to sever the portion regarding premonition would deprive her of her right to have the jury consider and weigh the effect which knowledge by the minor son of his previous dizzy spells should have had upon his decision to operate a motor vehicle.
In appraising these antipodal views of the litigants, we note that the testimony does establish that defendant's son knew he had experienced intermittent dizzy spells for at least one year before the accident. It also reveals that these were characterized by such symptoms as staring into space, ceasing to talk in the middle of a sentence, and failing to answer questions, followed by recovery symptoms whereby Larry would shake himself and resume previous conversational activity. The doctors' diagnosis of petit mal epilepsy subsequent to the accident was largely arrived at through this testimony describing the dizzy spells and reactions which occurred prior to the accident. At least one doctor declared that he had arrived at his diagnosis from Larry's own account. It is clear that the previous dizzy spells as described were indicative of an unusual, abnormal, and recurring condition which spanned a considerable period of time.
The problem here is the trial judge's holding that there was no evidentiary basis *193 upon which he could have given the jury charge in issue, consequent upon which was his order setting aside the jury verdict and granting motion for new trial. We have stated the rule as being that loss of consciousness is a good defense when there is no premonition or warning. In asserting this defense, the defendant assumes the burden of proof. There are two essentials which one must establish in order for the defense to be a valid one, (1) the sudden physical or mental incapacity and (2) the unanticipatable and unforeseen nature of such incapacity. Plaintiff here was called upon only to establish a prima facie case of negligence; it was not incumbent upon her to prove that there had been no forewarning but instead it was upon the defendant to go forward with the proof of his defense. When the judge charged the jury, he could not restrict that charge to the phase of blackout to the exclusion of the charge relating to premonition. Although the apparent reasoning back of the court's ruling was, as urged by the defendant, that the evidence did not support premonition, yet if there was to be given any charge under the defense interposed, that charge could not be split any more than could the defense itself have been stripped of one of its necessary requisites.
Recognizing the broad discretion accorded a trial judge by the Cloud v. Fallis decision, Fla. 1959, 110 So.2d 669, we nevertheless have here a problem of law to be applied in the light of the undisputed evidence. It appears to this court that from these considerations, the trial judge in initially giving the charge so as to include premonitory warning, acted properly.
We add certain observations concerning the petit mal form of epilepsy and its effect on one afflicted with it as found in Gray's Attorneys' Textbook of Medicine, Third Edition, Volume 2, section 100.01-100.22, pages 1046-1082. These, we think, are both illuminating and interesting with respect to the present case. Petit mal attacks are described as being of very short duration, with momentary unconsciousness during which the patient will stop whatever he is doing until he is again conscious. Petit mal manifests itself in a great variety of peculiarities, according to Gray; the patient may falter or fumble, or may simply be confused for a moment. One variety does not involve complete loss of consciousness, but the patient may hear and not be able to respond. Such conditions, the text continues, may be called lapses and are frequently described by the patient as dizzy spells. Observers often say the patient appears to be thinking, his mind elsewhere. It is said that there is usually no warning of an approaching attack, nor recollection of the attack.
An epileptic is characterized as having the tendency to belittle or hide his infirmity, wishing to be like other people who drive cars, swim, ride bicycles, and work with moving machinery. He is not willing to admit the hazard that may result from his condition. He does not confide in others as to his trouble and often does not know of it himself.
The average number of attacks suffered by one afflicted with petit mal epilepsy is said to be 573 per year, ranging in different individuals from less than 20 seizures annually to 20 per day. The observation is made that without doubt automobile accidents are caused directly by epilepsy in a far greater proportion of cases than known, and that the petit mal victim is more likely to be involved in an accident because of the patient's attempt to lead a normal life. For anyone who knows himself to be an epileptic ever to drive a car is stated to be unforgivable.
It was proper for the trial judge to give the assaulted charge. Consequently, he erred in ordering new trial. The order is reversed and the cause remanded for reinstatement of the verdict.
Reversed.
SMITH and WHITE, JJ., concur.
NOTES
[1] "CONSIDERED, ORDERED and ADJUDGED that the verdict herein and the judgment entered thereon, on the 29th day of June, 1960, be and they are hereby set aside and vacated on the ground that the Court erred in giving to the jury the following Court Charge, over the Defendant's objection, to-wit:

"`The fact that the defendant's automobile left the roadway and ran up on to the sidewalk, which is admitted, is prima facie evidence of negligence, that is to say, negligence on its face, nothing else appearing. This prima facie evidence, however, may be overcome by proof of surrounding circumstances and conditions which will eliminate the character of negligence from the transaction.
"`In this connection, the Court charges you that a driver who suffers a sudden loss of consciousness or blackout is not guilty of negligence unless it is made to appear from the preponderance of the evidence that prior to such loss of consciousness he knew or by the exercise of ordinary care should have known that he might suffer a loss of consciousness.
"`Therefore, if you find from the evidence that the automobile of the defendant left the road and struck the plaintiff by reason of a loss of consciousness by the driver it will be your duty to return a verdict for the defendant unless you find that before the accident he knew, or by the exercise of that degree of care required of persons of like age, intelligence and experience that he might experience such a loss of consciousness.' for the reason that there was no evidence to serve as a basis for the above charge and the giving of the above charge in this cause constituted harmful error to the rights of the defendant, James R. Patrick, which harmful error was not cured by the Court's Charge as a whole to the Jury. The costs of the trial are to abide the event of the action."