WIGGINTON, Judge.
Charles Henneke, plaintiff below, appeals from a jury verdict and final judgment in favor of Julian’s Paint and Body Shop (Julian’s), Ruth Land, Rudolph Kreft and Auto-Owners Insurance Company, defendants below, based on the defense of sudden loss of consciousness. We affirm.
On April 15, 1981, Henneke was injured when an automobile owned by Julian’s, and operated with Julian’s consent by Kreft, struck him from behind as he stood on the sidewalk in front of his house. Witnesses testified that the automobile proceeded off the highway at a forty-five degree angle and jumped the curb onto the sidewalk where it immediately straightened out, continued down the sidewalk striking Henneke, then a telephone pole, knocking it in half, all without stopping. Thereafter, eyewitness accounts are conflicting as to whether the automobile returned to the highway or continued off to the right.
Prior to the accident, Kreft testified he was traveling north at thirty-five miles per hour. His last recollection was of being just south of the accident site. He regained consciousness in a parking lot north of the site, not realizing there had been an accident but aware that his engine was racing and the tires “screeching” due to his having both the accelerator and the brakes depressed.
Kreft stated that he drove out of the parking lot and back onto the highway, feeling nauseated, sick and shaken, “like [he] maybe had a black-out.” For that reason he turned off the highway onto a side street to park and rest. When he stopped he noticed a van stop behind him. The driver of the van and witness to the accident, Lewis Schroer, approached Kreft, who was sitting in the automobile, and informed him that he had been in an accident. Kreft appeared to Schroer to be “shaken up and dazed,” and to have possibly suffered a heart attack. According to Schroer, Kreft pulled over and parked only after Schroer began blowing his horn, signaling Kreft to stop.
Kreft was seventy-three years old at the time of the accident. He testified that he had experienced no symptoms prior to the accident that would indicate he might be subject to a sudden blackout or loss of consciousness. He did state, however, that he had been momentarily knocked unconscious in an auto accident on March 28, 1981, in which he received a blow to the head. He was immediately treated in the emergency room and released the same day, after a laceration was sutured. X-rays were negative. Kreft rested in bed for eight days before borrowing an automobile from Julian’s and returning to his job.
Kreft testified that he did not thereafter experience any dizziness, fainting spells, loss of consciousness or sickness that would otherwise lead him to believe that he might faint or black out, although he did have headaches and noticed a tingling sensation of his scalp and a feeling of fullness in his head.
Kreft’s prior medical history consisted of treatment for hypertension, angina, pleurisy, and inflammation of the left foot. Elevated blood pressure was first observed in 1978, but apparently resolved itself, as Kreft was advised in 1979 by his treating physician, Dr. Edwards, to come in only “as needed for symptoms.” When Kreft’s blood pressure was checked in the emergency room after the March 28 accident, it was normal; several days after the April 15 accident, it was elevated. No problems with loss of consciousness were ever related to Dr. Edwards prior to the subject accident, and Kreft was never advised not to drive. At the time of the accident, Kreft was operating under a current Florida driver’s license.
Based upon the history given by Kreft, and an examination of him on April 23, *300 1981, Dr. Edwards concluded that Kreft had suffered a cerebrovascular accident (cva) on April 15, which caused a blackout. According to Dr. Edwards, a cva is a common, mild stroke, usually occurring without warning. It is not unusual for a mild cva to occur and never happen again, and result in elevated blood pressure following an episode.
Based on these facts, the jury could have reasonably concluded that Kreft had suffered from a sudden loss of consciousness immediately prior to the accident on April 15. There was sufficient evidence to show that Kreft had suffered a sudden physical and medical incapacity by way of a cva; that the cva was unanticipated and unforeseen; and that it was the legal cause of the accident. This case is therefore distinguishable from Malcolm v. Patrick, 147 So.2d 188 (Fla. 2d DCA 1962), in which it was shown that the defendant had experienced episodes of dizziness and unconsciousness prior to the accident. And cf. Goodis v. Finkelstein, 174 So.2d 600 (Fla. 3d DCA 1965), in which prior to the date of the accident the driver suffered dizzy spells and was under a doctor’s care. Accordingly, we affirm the final judgment.
We have not overlooked Henneke’s argument that the verdict was motivated by prejudice and passion against him because of his being an alcoholic. However, it is obvious from a reading of the record that Henneke’s counsel initiated in-depth examination of witnesses, including Henneke himself, concerning Henneke’s alcoholism, a trial strategy directed toward seeking increased damages from an alleged aggravation of the condition due to the accident. If the jury was thereby inflamed, such a result was invited by plaintiff. In any event, the jury acted within its province on conflicting testimony and evidentiary inferences, and Henneke has not demonstrated error so prejudicial to a fair trial as to justify reversal. Causeway Marina, Inc. v. Mandel, 276 So.2d 71 (Fla. 3d DCA 1973).
ROBERT P. SMITH, Jr., C.J., and SHIVERS, J., concur.