LAWSON, J.
 

 Leonidas Abreu, the plaintiff in an automobile negligence case, appeals a final summary judgment for the defendants, Teddy Woodall and his employer, F.E. Development Recycling, (“F.E. Development”), which effectively ruled that the defendants had established as a matter of law the affirmative defense that Woodall suddenly and unexpectedly lost consciousness before the crash. We agree with Abreu that the trial court erred in granting summary judgment because genuine issues of material fact exist on the suddenness and foreseeability elements of the defense.
 

 “As a general rule, the operator of an automobile, vessel or other mode of transportation who unexpectedly loses consciousness or becomes incapacitated is not chargeable with negligence as a result of his or her loss of control.”
 
 Feagle v. Purvis,
 
 891 So.2d 1096, 1098-99 (Fla. 5th DCA 2004) (citations omitted);
 
 see also, Bridges
 
 
 *969
 

 v. Speer,
 
 79 So.2d 679 (Fla.1955) (“It is not even simple negligence if one has a sudden attack, loses control of his car and causes an accident if he had no premonition or warning.”). To establish the defense of sudden and unexpected loss of capacity or consciousness, the defendant must prove the following:
 

 1. The defendant suffered a loss of consciousness or capacity.
 
 See, e.g., Bridges v. Speer,
 
 79 So.2d 679, 681 (Fla.1955);
 
 Wilson v. The Krystal Co.,
 
 844 So.2d 827 (Fla. 5th DCA 2003).
 

 2. The loss of consciousness or capacity occurred before the defendant’s purportedly negligent conduct.
 
 See Malcolm v. Patrick,
 
 147 So.2d 188, 193 (Fla. 2d DCA 1962).
 

 3. The loss of consciousness was sudden.
 
 See, e.g., Baker v. Hausman,
 
 68 So.2d 572, 573 (Fla.1953);
 
 Malcolm.
 

 4. The loss of consciousness or capacity was neither foreseen, nor foreseeable.
 
 See, e.g., Baker; Wilson; Wingate [v. United Servs. Auto Assoc.,
 
 480 So.2d 665 (Fla. 5th DCA 1985)];
 
 Malcolm.
 

 Feagle,
 
 891 So.2d at 1099.
 

 In this case, it is undisputed that Woo-dall lost consciousness while driving when he suffered a brain aneurism, and that his loss of consciousness caused the collision which injured Abreu. Defendants submitted the affidavit of a medical expert explaining that: “it would have been impossible for the patient [Woodall] to know prior to the accident ... that he had an inter-cranial aneurism.” It was this opinion which apparently swayed the trial court when deciding the summary judgment motion.
 

 However, medical notes submitted for consideration at summary judgment indicated that Woodall had a history of aneurysm, and discussed a “nephrology consult” which stated that an angiography was recommended due to a “known history of cerebral aneurysm.” Another medical report described Woodall as a “severe vas-culopath
 
 [1]
 
 who was not getting proper medical care.”
 
 [2]
 
 In addition, various medical records indicated that on the day of the accident, Woodall had a headache for several hours prior to losing consciousness, and that his “head was spinning.” The records further report that Woodall “tried to drive home” but “started having blurry vision where he could not see” and “felt like he was going to pass out.” This evidence raises questions of fact as to whether Woodall’s loss of consciousness was foreseeable, how suddenly he lost consciousness and whether he had any “premonition or warning” of it. Given this conflicting evidence, summary judgment should not have been granted.
 
 See Feagle,
 
 891 So.2d at 1099.
 

 Accordingly, we reverse the final judgment, and remand for further proceedings.
 

 REVERSED AND REMANDED.
 

 ORFINGER and JACOBUS, JJ., concur.
 

 [1]
 

 . A vasculopath is a person with vascular disease.
 

 [2]
 

 . The records indicate that Woodall was not receiving proper care because of his failure to comply with medical recommendations for medication and cessation of smoking.