IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

NELSON V. JANTZE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

PHYLLIS L. NELSON, APPELLANT,
V.
LINDA K. JANTZE, PERSONAL REPRESENTATIVE OF THE
ESTATE OF SAVANA L. RILEY, ET AL., APPELLEES.

Filed January 20, 2015.    No. A-13-1018.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Bernard J. Glaser, Jr., for appellant.

Robert B. Seybert and Gail S. Perry, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellees.

IRWIN, INBODY, and PIRTLE, Judges.

INBODY, Judge.

## I. INTRODUCTION

Phyllis L. Nelson appeals the order of the Lancaster County District Court granting the appellees' motion for summary judgment and dismissing her complaint with prejudice.

## II. STATEMENT OF FACTS

### 1. BACKGROUND

On the morning of February 11, 2010, Nelson was driving her vehicle northbound on 84th Street in Lincoln, Lancaster County, Nebraska, near O Street, at the intersection of 84th Street and Blue Sky/Sunridge. Riley was driving a vehicle owned by her mother, Linda K. Jantze, and her stepfather, Maurice D. Jantze, southbound on 84th Street and was approaching the same intersection as Nelson from the opposite direction. Riley's vehicle crossed the

- 1 -

centerline of 84th Street and struck Nelson's vehicle. Nelson was injured in the accident, which injuries required medical treatment and rehabilitation. Riley also sustained injuries and fell into a coma as a result of the accident.

## 2. PROCEDURAL HISTORY

Shortly after the accident, in March 2010, Nelson filed a complaint and an amended complaint against Riley and the Jantzes alleging negligence and seeking $175,000 in damages, future medical expenses, and any other general damages necessary. Riley and the Jantzes filed an answer and motion to dismiss admitting that there was an accident, but alleging that the accident was unavoidable as a result of an unforeseeable sudden loss of consciousness. In August 2010, Riley passed away as a result of injuries she sustained in the accident. Nelson amended her complaint to name the personal representative of Riley's estate, Linda, in lieu of Riley herself. Nelson's second amended complaint further increased her request for damages to $1.5 million.

In April 2013, the Jantzes filed a motion for summary judgment, alleging that there was no genuine issue of material fact. In response, Nelson filed a motion for partial summary judgment, alleging that there was no genuine issue of material fact as to fault and liability and that she was entitled to judgment on those issues. Nelson filed several other motions, including a motion for sanctions and a motion in limine requesting that the Jantzes be prohibited from calling or presenting the testimony of Dr. Lewiston Birkmann and Angela Morehouse regarding sudden loss of consciousness or epileptic seizures. Nelson filed a second motion in limine additionally requesting that the Jantzes be precluded from raising numerous other issues, including references to jury verdicts in other parts of the country, the use of the word "lottery," any statements regarding opposing counsel's past experiences, and statements regarding living in a "sue happy society" or "litigious society," allegations that Nelson was contributorily negligent or had aggravated a preexisting condition, any statement or evidence regarding whether Riley died in the collision, the receipt of insurance benefits by Nelson, and anything else not properly produced through discovery. Nelson filed a third and final motion in limine requesting the preclusion of any mention of Nelson's injuries or that she had insurance coverage for those injuries.

## 3. HEARING ON MOTIONS IN LIMINE AND SUMMARY JUDGMENT

A hearing was held on the pending matters, and evidence was submitted to and received by the district court. At the hearing, Nelson withdrew the motion for sanctions and her third motion in limine. During the hearing, evidence was submitted that Morehouse was driving directly behind Riley at the time of the accident. Morehouse witnessed Riley slump over just prior to the accident such that Riley's head went down to the right side and dangled in a manner that indicated to Morehouse that Riley was not conscious. Morehouse observed Riley's vehicle veer into oncoming traffic and stated that she did not see any turn signals or brake lights or hear any tires screeching prior to the impact of Riley's vehicle into oncoming traffic.

Evidence was also submitted that in November 2006, 4 years before the accident, Riley experienced a seizure which caused her to lose consciousness. At that time, Riley was taken to the emergency room and, thereafter, underwent testing by a neurologist, Dr. Birkmann. Dr. Birkmann's testing showed that Riley likely suffered from a seizure disorder, and he prescribed

her an anticonvulsant medication. In 2008, Riley tapered off her medication and ultimately stopped refilling her prescription in September. Dr. Birkmann gave no indication that Riley suffered any additional seizures between November 2006 and the accident.

Dr. Birkmann could not identify whether or not Riley initially had a seizure in 2010, which caused the collision, or if she suffered a seizure as a result of the head injury she sustained in the collision. In his deposition, Dr. Birkmann testified that from the witness' observations of Riley slumping over, "[t]hey don't describe a seizure, per se, just slumped over the steering wheel, so it's hard to say." Dr. Birkmann also indicated that it was not reasonable for Riley to know that she would have any additional seizure episodes at the time of the accident in 2010, specifically stating that "if she's been off of medication for that long and had not had any [seizures], then I would assume that she probably won't ever have one again."

The deposition of Dr. Robert McKeeman was also received at the hearing. Dr. McKeeman is a board-certified family physician who began treating Riley just after she was born in 1990. Dr. McKeeman testified that Riley's birth mother used cocaine when she was pregnant with Riley and that Riley was diagnosed with fetal alcohol syndrome. Dr. McKeeman continued to serve as Riley's family physician over the years, treating Riley for various illnesses as many children experience. In 2005, Riley was seen for headaches. In August 2010, Dr. McKeeman testified that Riley was suffering from significant traumatic brain injury and decerebrate neurological dysfunction from the injury she sustained in February 2010, in the collision with Nelson.

### 4. DISTRICT COURT'S ORDER

The district court overruled and denied Nelson's motion for partial summary judgment, denied Nelson's first motion in limine, and found that the parties had stipulated to each of the requests in Nelson's second motion in limine, except for paragraph 3 which was overruled and denied and paragraph 6 which was withdrawn by Nelson. As to the Jantzes' motion for summary judgment, the district court relied upon *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994), in finding that Nebraska allows for a loss of consciousness defense under the rationale that where a driver is suddenly deprived of his or her senses by blacking out, the driver cannot comprehend the nature and quality of those acts. The district court found that in accordance with *Storjohn v. Fay, supra*, if the evidence was conflicting as to whether the accident was caused by a driver's sudden loss of consciousness and whether that loss was unforeseen was a question of fact for the jury; but, if the evidence pointed to only one reasonable conclusion, it was a question of law for the court.

Regarding loss of consciousness, the district court found that contrary to Nelson's assertions, expert testimony was not necessary to show loss of consciousness, which evidence was undisputed through the testimony of Morehouse. The district court found that expert testimony also corroborated loss of consciousness. As to foreseeability, the district court found that the undisputed facts demonstrated that the sudden loss of consciousness was not foreseeable because there was no evidence to show that Riley could have foreseen losing consciousness and there was no evidence that Riley had any seizure or seizure activity since November 2006. The district court concluded that the undisputed material facts demonstrated that Riley suffered a sudden unforeseeable loss of consciousness and that the affirmative defense applied as a matter

of law. The district court granted the Jantzes' motion for summary judgment and dismissed Nelson's complaint with prejudice.

Nelson filed a motion for new trial, reconsideration, and rehearing, alleging, among other things, that the district court failed to address her "**Shaffersman/Carlson/Daubert** [sic] motion (motion in limine one)." The district court entered an order finding that it was not required to engage in a *Daubert*/*Schafersman* analysis, because the facts supported the sudden loss of consciousness defense and because there was no particularized scientific methodology or knowledge that would trigger the analysis; that there was no evidence to suggest anything other than that Riley suffered a loss of consciousness immediately before the accident; and that Morehouse was not testifying as an expert. The district court overruled Nelson's motion, and it is from that order that she has timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Nelson assigns that the district court erred by granting the Jantzes' motion for summary judgment based upon evidence that Riley sustained a sudden loss of consciousness and foreseeability. Nelson also assigns that the district court erred in admitting the testimony of Morehouse and by failing to hold a *Daubert*/*Schafersman* hearing regarding the testimony of Dr. Birkmann.

## IV. STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Gaytan v. Wal-Mart*, 289 Neb. 49, 853 N.W.2d 181 (2014). In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## V. ANALYSIS

### 1. NEB. REV. STAT. § 27-403 (REISSUE 2008)

Nelson first argues that the district court erred in allowing Morehouse to testify over objection, because Morehouse's testimony was inadmissible under § 27-403.

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. DeJong*, 287 Neb. 864, 845 N.W.2d 858 (2014). Determining the relevancy of evidence is a matter entrusted to the discretion of the trial court. *Id.*

Section 27-403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to that determination of the action more probable or less probable than it would be without the evidence. *State v. McPherson*, 266 Neb.

734, 668 N.W.2d 504 (2003). An analysis under § 27-403 requires a court to weigh the probative value of the particular evidence against the danger of unfair prejudice. *State v. Epp*, 278 Neb. 683, 773 N.W.2d 356 (2009).

In her first motion in limine, Nelson argued that Morehouse's opinion that just prior to the collision, Riley was slumped over at the wheel of her vehicle was irrelevant, as the sudden loss of consciousness defense did not apply to the facts of the case. We disagree, this testimony was directly relevant to whether or not the sudden loss of consciousness was available to Riley's defense.

Morehouse was traveling in her vehicle behind Riley at the time of the accident. Morehouse observed Riley slump over at the wheel and observed Riley's vehicle veer into the oncoming traffic lane at that time. The probative value of Morehouse's testimony is not outweighed by any danger of unfair prejudice, confusion of the issues, or misleading the jury. Morehouse's testimony does not attempt to give any expert medical testimony, nor does she make any ultimate conclusions regarding the accident. Morehouse was the sole witness of what happened to Riley immediately prior to the collision, and her testimony is clearly relevant to the case. Simply because Nelson believes that Morehouse's testimony is irrelevant does not make it so. The district court did not abuse its discretion by allowing Morehouse's testimony, by denying Nelson's motion in limine, and in considering the testimony for the motion for summary judgment. This assignment of error is without merit.

## 2. *DAUBERT*/*SCHAFERSMAN* ANALYSIS

Nelson argues that the district court also erred by failing to engage in a *Daubert*/*Schafersman* analysis with regard to Dr. Birkmann's expert testimony.

A trial judge acts as a gatekeeper for expert scientific testimony and must determine (1) whether the expert will testify to scientific evidence and (2) if that testimony will be helpful to the trier of fact. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001). This entails a preliminary assessment whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology may be properly applied to the facts in issue. *Id*.

Nelson argues that Dr. Birkmann failed to base his opinion on medical records of another treating doctor and therefore, did not give a valid medical opinion that would assist the trier of fact. Upon our review of the record, however, Dr. Birkmann was not required to base his opinion on that of another treating doctor. Dr. Birkmann was Riley's treating neurologist and had treated her from 2006 through the accident. Nelson does not allege that Dr. Birkmann was not qualified to give expert testimony, and there is no dispute in the record as to his medical qualifications or ability to give expert medical testimony generally. Dr. Birkmann personally treated Riley on several occasions and gave his opinion based upon that treatment. There is no merit to Nelson's argument that the district court erred by failing to engage in a *Daubert*/*Schafersman* analysis, which was not necessary in this situation for determining the admissibility of Dr. Birkmann's expert medical opinion.

- 5 -

## 3. SUMMARY JUDGMENT

Nelson argues that the district court erred in granting the Jantzes' motion for summary judgment. Nelson's initial complaint alleged that Riley was negligent, and in response, Riley pled the affirmative defense of sudden loss of consciousness.

In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. *Gaytan v. Wal-Mart*, 289 Neb. 49, 853 N.W.2d 181 (2014); *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010). The duty in a negligence case is to conform to the legal standard of reasonable conduct in the light of the apparent risk. *Id*. The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Id*.

Sudden or momentary loss of consciousness while driving is a complete defense to an action based on negligence if such a loss of consciousness was not foreseeable. See *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994). An exception to this general rule exists where a person knows that he is suffering from an illness which will likely cause his loss of consciousness. *Id*.

Where the plaintiff has established a prima facie case of negligence, the burden shifts to the defendant to establish the loss of consciousness defense. *Id*. In such a case, the defendant's burden is twofold. First, the defendant must present sufficient evidence to establish that he suffered a sudden loss of consciousness prior to the accident and, second, that the loss of consciousness was not foreseeable. *Id*.

In *Storjohn v. Fay*, 246 Neb. at 460, 519 N.W.2d at 527, the Nebraska Supreme Court found:

> In determining whether an issue presents a question of law for the court or a question of fact for the jury, it has been held that where the evidence is conflicting as to whether the accident was caused by the driver's sudden loss of consciousness and whether the loss of consciousness was unforeseen, it is a question of fact to be determined by the jury. *Watts* [*v. Smith*, 226 A.2d 160 (D.C. App. 1967)]. However, if the evidence points to only one reasonable conclusion, it is a question of law for the court. *Tannyhill v. Pacific Motor Trans. Co.*, 227 Cal. App. 2d 512, 38 Cal. Rptr. 774 (1964). See *Eleason* [*v. Western Casualty & Surety Co.*, 254 Wis. 134, 35 N.W.2d 301 (1948)]. Cf. *Mackiewicz v. J.J. & Associates*, 245 Neb. 568, 514 N.W.2d 613 (1994) (as a matter of law, when reasonable persons can reach only one conclusion, questions of fact which would normally be submitted to a jury become questions of law for the court to decide).

In granting the motion, the district court relied upon *Storjohn v. Fay, supra*, wherein an automobile injury victim sued the driver of another vehicle for personal injury when the driver's vehicle struck the victim's vehicle. In that case, the two vehicles were involved in a head-on collision and the plaintiff alleged that the collision was caused by the defendant's negligence. The defendant denied any negligence and pled that the collision was the result of an unavoidable accident as a result of a blackout he suffered while driving. *Id*. The defendant had been diagnosed with epilepsy several years before. *Id*. A jury trial was held on the matter, during which the trial court gave the jury an instruction on the defense of unavoidable accident. *Id*. The jury returned a verdict for the defendant. *Id*. The plaintiff appealed to the Nebraska Supreme

Court alleging that the defendant failed to present expert testimony regarding epilepsy and his loss of consciousness, and that the defendant failed to present evidence that his loss of consciousness was not foreseeable. *Id*. The Supreme Court held that the defendant had failed to establish the affirmative defense based upon a loss of consciousness; that, even assuming loss of consciousness, the defendant's past history of blackouts made it foreseeable that the defendant would lose consciousness while driving a motor vehicle; and that operation of a motor vehicle with knowledge that the defendant could become unconscious at any time was negligence per se. *Id*.

In the present case, we find that *Storjohn v. Fay, supra*, is instructive, but does not directly address the same set of circumstances, because although dealing with identical issues, i.e., negligence, loss of consciousness, and a past history of seizure disorder, that case involved a full trial and the issues were submitted to the jury. In this case, the matter is only in the pretrial stages and was submitted to the district court on motions for summary judgment. Therefore, in addition to *Storjohn v. Fay, supra*, and the instructions of the Nebraska Supreme Court, we also look to cases outside of Nebraska which involve the submission of the matter of loss of consciousness at the motion for summary judgment stage and not at the jury trial stage. See, *Shiner v. Ralston*, 64 A.3d 1 (Pa. Super. 2013) (material issues of fact as to whether defendant driver's medical emergency was unforeseen and whether defendant driver established sudden medical emergency defense precluded grant of summary judgment to estate of defendant driver on plaintiff's negligence claim); *Abreu v. F.E. Development Recycling, Inc.*, 35 So. 3d 968 (Fla. App. 2010) (evidence of history of aneurysm, medical reports, and medical records raised questions of fact as to whether driver's loss of consciousness was foreseeable); *Karl v. Terbush*, 63 A.D.3d 1359, 881 N.Y.S.2d 207 (2009) (issues of fact remain and summary judgment was not proper when testimony and medical records established that 1 month prior to collision, defendant experienced dizziness, lightheadedness, and weakness, which increased in frequency); *Feagle v. Purvis*, 891 So. 2d 1096 (Fla. App. 2004) (genuine issue of material fact, whether driver's loss of consciousness due to heart issues, was foreseen or foreseeable, precluded summary judgment); *Cooke v. Grigg*, 124 N.C. App. 770, 478 S.E.2d 663 (1996) (question of driver's blackout was foreseeable, given his medical history, and was properly submitted to jury); *McCall v. Wilder*, 913 S.W.2d 150 (Tenn. 1995); *Lutzkovitz v. Murray*, 339 A.2d 64 (Del. 1975) (where defendant adduces evidence supporting blackout defense, and where plaintiff adduces evidence of defendant's medical history that bears on whether defendant should reasonably have foreseen possible loss of control, issue of foreseeability is for jury); *Renell v. Argonaut Co.*, 148 Colo. 154, 365 P.2d 239 (1961) (where driver claimed he blacked out due to lack of sleep, it was exclusively within province of jury to determine whether he knew or should have known that he might black out or faint because of exhaustion). Compare, *Beasley v. Amburgy*, 70 S.W.3d 74 (Tenn. App. 2001) (granting of summary judgment for defendants proper where loss of consciousness was not reasonably foreseeable).

(a) Loss of Consciousness

Nelson argues that the district court erred in finding that Riley sustained a sudden loss of consciousness and granting summary judgment on that basis.

Riley slipped into a coma as a result of the injuries sustained in the accident and did not awaken from that condition, eventually passing away, so no light can be shed on her own experience before the collision. However, there was eyewitness testimony that confirmed that Riley lost consciousness prior to the collision, and also medical opinion that Riley suffered a loss of consciousness before the collision. Nelson appears to rely on the fact that there is no medical proof or testimony that Riley's loss of consciousness was the result of a seizure. However, that is not required, and the only issue is whether the defendant did in fact lose consciousness. See *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994). "The objective nature and effect of 'blacking out' or losing consciousness is plainly apparent, and therefore, no expert testimony is required." *Id.* at 462, 519 N.W.2d at 528.

The undisputed evidence presented to the district court was that Morehouse testified she was driving her vehicle behind Riley's immediately before Riley's collision with Nelson, when Morehouse observed Riley

> slumped down to the right side, and her head was kind of dangling, and then her vehicle slowly started to veer into the center lane, which would be the turn lane. And then it continued into the northbound inside lane, and that's where they collided head-on, in that northbound lane.

Morehouse further explained that she used the term "slump" because it did not appear that Riley was bending down toward the radio or to grab something.

Furthermore, the record contains the opinion of Dr. Deepak Madhavan that, in agreement with Dr. Birkmann's opinion, it cannot be definitely stated that Riley had a seizure at the time of the collision, but that "she did suffer some alteration of consciousness prior to the collision."

In our review of the evidence in the light most favorable to Nelson, and giving her the benefit of all reasonable inferences deducible from the evidence, we find no genuine issue of material fact or the ultimate inference drawn from the fact that Riley did suffer sudden loss of consciousness immediately before the collision with Nelson. The district court did not err in this determination.

(b) Foreseeability

Second, Nelson argues that the district court erred in finding that the evidence established that Riley's loss of consciousness was not reasonably foreseeable as a matter of law. Nelson contends that although the evidence was insufficient to show that Riley suffered an epileptic seizure and loss of consciousness, there existed a genuine issue of material fact regarding foreseeability based upon evidence of Morehouse's description of Riley's movements, Riley's previous diagnosis for a seizure disorder, and Riley's having stopped taking her antiseizure medication.

In establishing the loss of consciousness defense, the issue of foreseeability is crucial. The defense is not available where a driver was put on notice of facts sufficient to cause an ordinary and reasonable person to anticipate that his or her driving might likely lead to injury to others. *Storjohn v. Fay, supra*. Where it is undisputed that the defendant knew that he or she was subject to attacks which could result in a sudden loss of consciousness, the evidence is such that the defendant's loss of consciousness was foreseeable. *Id.*

In *Storjohn v. Fay, supra*, the Nebraska Supreme Court found that there was no testimony in the record to support a conclusion that the driver's loss of consciousness was not reasonably foreseeable. The driver knew he was subject to seizures and knew that the medication he was taking did not control his seizures. *Id.*

In Tennessee, the question of liability when a motor vehicle accident caused by a driver's sudden loss of consciousness when the driver suffered a seizure was addressed in *McCall v. Wilder*, 913 S.W.2d 150 (Tenn. 1995). The trial court granted summary judgment in favor of the defendant. The Tennessee Supreme Court set forth a number of "pertinent, nonexclusive considerations" to assist courts in the evaluation of foreseeability of sudden loss of consciousness in a driving situation:

> [T]he extent of the driver's awareness or knowledge of the condition that caused the sudden incapacity; whether the driver had sought medical advice or was under a physician's care for the condition when the accident occurred; whether the driver had been prescribed, and had taken, medication for the condition; whether a sudden incapacity had previously occurred while driving; the number, frequency, extent, and duration of incapacitating episodes prior to the accident while driving and otherwise; the temporal relationship of the prior incapacitating episodes to the accident; a physician's guidance or advice regarding driving to the driver, if any; and medical opinions regarding the nature of the driver's condition, adherence to treatment, foreseeability of the incapacitation, and potential advance warnings which the driver would have experienced immediately prior to the accident.

*Id.* at 156. The *McCall* court applied these factors to the case, which included stipulated facts that the defendant had previously suffered seizures, was aware that he had a seizure disorder that could cause unconsciousness, and had recently been diagnosed with a brain tumor which was corroborated with a physician's affidavit opining that driving in such a condition resulted in the defendant's taking an unreasonable risk. The court found that summary judgment was not appropriate because there was a question of material fact as to whether it would be foreseeable to a reasonable person that he would lose consciousness while driving. *Id.*

In the majority of the cases cited previously in this opinion from around the country, most decisions reversing the order of the trial court granting motions for summary judgment in favor of the defendant are based upon the issue of foreseeability and that it should be a question of fact submitted to the jury. In this case, the district court found that the undisputed facts showed that Riley's sudden loss of consciousness was not foreseeable. The district court determined that the only evidence regarding foreseeability was that Riley was epileptic, not that she could foresee losing consciousness because she had suffered one seizure in 2006.

The evidence in the record indicates that Riley was born with fetal alcohol syndrome which may or may not lead to various kinds of conditions, including seizure disorders. In 2006, Riley suffered a seizure and lost consciousness. Riley was treated and prescribed anticonvulsion medicine, which she took for a while, but eventually tapered off and discontinued altogether by 2008. There was no indication in the record that Riley had or had not suffered from any further seizures since that time. Dr. Birkmann opined that it was not reasonable for Riley to know that she would have any additional seizure episodes at the time of the accident in 2010, specifically

stating that "if she's been off of medication for that long and had not had any [seizures], then I would assume that she probably won't ever have one again."

However, Dr. Madhavan opined that Riley suffered from "an elevated risk of having seizures when compared to the general population, particularly off of medication." Dr. Madhavan opined that it was possible for patients to grow out of epilepsy as the brain matures, and he stated that he supported patients attempting to wean off of seizure medications after 3 to 4 years of "seizure freedom." Further, Dr. Madhavan explained that such a patient could still experience seizures, which especially in Riley's case as a child with an in utero history and fetal drug and alcohol exposure, would put her at continued risk for seizure activity.

Thus, it appears that there exists a genuine issue of material fact as to whether Riley's loss of consciousness was foreseeable. The district court erred in determining this issue as a matter of law and thereby erred in granting the Jantzes' motion for summary judgment. The order of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

## VI. CONCLUSION

In sum, we conclude that the district court did not abuse its discretion by allowing Morehouse's testimony to be received over Nelson's § 27-403 objection and that a *Daubert*/*Schafersman* analysis was not required as to Dr. Birkmann's testimony. We further find that the district court did not err in granting the Jantzes' motion for summary judgment as to the loss of consciousness, but find that a genuine issue of material fact exists regarding the foreseeability of Riley's loss of consciousness. Therefore, we affirm the order of the district court in part and in part reverse with regard to the issue of foreseeability, and remand the cause to the district court for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.