IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 13, 2024 Session

## AJALON ELLIOTT ET AL. v. HAROLD JUNIOR MONGER ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-4776-21      Mary L. Wagner, Judge**
_____

### No. W2023-01783-COA-R3-CV
_____

This appeal arises from an automobile accident. Appellants, one of the drivers and her husband, filed a complaint for negligence against appellees, the other driver and his employer. Appellees filed a motion for summary judgment, alleging that immediately preceding the collision, the appellee-driver experienced a heart attack that left him physically incapacitated and unable to control his vehicle. In granting the motion for summary judgment and dismissing the case, the trial court found that the sudden physical incapacitation doctrine provided appellees with a defense to appellants' negligence claim. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Darryl Humphrey, Memphis, Tennessee, for the appellants, Ajalon Elliott, and Freddrick Hurt.

Robert S. Mink, Sr. and Robert S. Mink, Jr., Jackson, Mississippi, for the appellees, Harold Junior Monger, and Your Golden Transportation, LLC.

## OPINION

### I. Background

On May 14, 2021, Ajalon Elliott was involved in a motor vehicle collision with Harold Monger. Mr. Monger was driving west with the intent to turn onto the access ramp of Interstate 55 South, and Ms. Elliott was driving towards him from the opposite direction.

Ms. Elliott alleges that Mr. Monger caused his vehicle to turn left toward the access ramp, into her lane of traffic, causing the vehicles to collide. At the time, Mr. Monger was driving a non-emergency medical transport van in his scope of employment with Your Golden Transportation, LLC ("Your Golden Transportation," together with Mr. Monger, "Appellees"), which owned and operated the van.

On December 1, 2021, Ms. Elliott and her husband, Freddrick Hurt (together, "Appellants"), filed a complaint against Appellees in the Circuit Court of Shelby County (the "trial court") for personal injuries and damages Ms. Elliott allegedly sustained in the accident. Appellants asserted that Mr. Monger was negligent and that Your Golden Transportation was vicariously liable for its employee's negligence. Appellants also asserted loss of consortium on behalf of Mr. Hurt. On May 12, 2022, Mr. Monger filed an answer, asserting as an affirmative defense, *inter alia*, that he suffered a heart attack immediately prior to the accident, which caused him to lose control of the van and collide with Ms. Elliott. On June 17, 2022, Your Golden Transportation filed an answer, also asserting as an affirmative defense, *inter alia*, that Mr. Monger suffered a heart attack immediately prior to the accident.

On August 4, 2023, Appellees filed a motion for summary judgment arguing that Mr. Monger was not negligent in causing the accident because the collision occurred when he experienced a sudden loss of consciousness or physical capacity—a heart attack. Appellees further argued that this sudden loss of consciousness or physical capacity was not reasonably foreseeable. In support of their motion, Appellees attached the transcript of Mr. Monger's deposition and the affidavit of Joseph Fredi, M.D., a board-certified cardiologist.

On September 12, 2023, Appellants filed a response to the motion for summary judgment. Therein, Appellants argued that Appellees failed to present undisputed evidence to support their allegation that Mr. Monger was unconscious prior to the accident or that his alleged unconsciousness was not foreseeable. Appellants attached, as exhibits to their response, Mr. Monger's patient records from the date of the accident and various online articles concerning high blood pressure, diabetes, and heart attacks. Appellants did not present any expert testimony to dispute Dr. Fredi's affidavit. On September 20, 2023, Appellees filed a reply to Appellants' response to the motion for summary judgment. To this reply, Appellees attached Mr. Monger's affidavit.

On September 22, 2023, the trial court heard the motion for summary judgment and granted it by order of November 15, 2023. The trial court found that Appellees established that Mr. Monger suffered a heart attack while driving, which caused him to have a sudden loss of consciousness or physical capacity. The trial court also found that Appellees provided proof that it was not reasonably foreseeable that Mr. Monger would suffer a sudden loss of consciousness or physical capacity due to a heart attack. Furthermore, the trial court found that Appellants failed to provide any admissible evidence to rebut

Appellees' evidence. Appellants filed a timely notice of appeal.

## II. Issue

The sole issue on appeal is whether the trial court erred when it granted Appellees' motion for summary judgment.[1]

## III. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. **Green v. Green**, 293 S.W.3d 493, 514 (Tenn. 2009). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The Tennessee Supreme Court has explained that when the party moving for summary judgment does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." **Rye v. Women's Care Center of Memphis, MPLLC**, 477 S.W.3d 235, 264 (Tenn. 2015) (italics omitted). Furthermore,

> "When a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co.,** [**Ltd. v. Zenith Radio Corp**.], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

---

[1] Appellants initially raised two issues on appeal. The second issue concerned whether Judge Mary Wagner should be recused as a trial judge from all matters brought by the Reaves Law Firm, LLC, the firm representing Appellants. At oral argument, the attorney for Appellants stated that they were waiving this issue as it was moot because Justice Wagner now sits as a member of the Tennessee Supreme Court.

*Rye*, 477 S.W.3d at 265.

## IV. Analysis

This case is guided by the Tennessee Supreme Court's decision in *McCall v. Wilder*, 913 S.W.2d 150 (Tenn. 1995), which established the rule on physical incapacitation while driving in the context of negligence claims. Like the instant appeal, *McCall* involved a negligence claim resulting from a motor vehicle accident. *Id.* at 152. The *McCall* Court began its analysis by explaining that a plaintiff alleging a negligence claim must establish the following elements: (1) that the defendant owed a duty of care to the plaintiff; (2) that the defendant's conduct was below the applicable standard of care such that the defendant breached that duty; (3) that the plaintiff suffered an injury or loss; (4) cause in fact; and (5) proximate or legal cause. *Id.* at 153 (internal citations omitted). Like *McCall*, this case turns on the first two elements, *i.e.,* Appellees' duty of care and whether that duty was breached.

As a defense to the plaintiff's negligence claim, the defendant in *McCall* alleged that the accident was "an unavoidable consequence of a sudden emergency created" when he suffered a seizure while driving. *Id.* at 152. After reviewing the jurisprudence in Tennessee and other jurisdictions, the *McCall* Court established the following rule:

> A sudden loss of consciousness or physical capacity experienced while driving which is not reasonably foreseeable is a defense to a negligence action. To constitute a defense, defendant must establish that the sudden loss of consciousness or physical capacity to control the vehicle was not reasonably foreseeable to a prudent person. As a result, the defense is not available under circumstances in which defendant was made aware of facts sufficient to lead a reasonably prudent person to anticipate that driving in that condition would likely result in an accident.
>
> In determining whether the loss of capacity or consciousness was foreseeable, pertinent, nonexclusive considerations would include: the extent of the driver's awareness or knowledge of the condition that caused the sudden incapacity; whether the driver had sought medical advice or was under a physician's care for the condition when the accident occurred; whether the driver had been prescribed, and had taken, medication for the condition; whether a sudden incapacity had previously occurred while driving; the number, frequency, extent, and duration of incapacitating episodes prior to the accident while driving and otherwise; the temporal relationship of the prior incapacitating episodes to the accident; a physician's guidance or advice regarding driving to the driver, if any; and medical opinions regarding the nature of the driver's condition, adherence to

treatment, foreseeability of the incapacitation, and potential advance warnings which the driver would have experienced immediately prior to the accident. These factors, and any other relevant ones under the circumstances, would tend to establish whether the duty to exercise reasonable care was breached.

*Id.* at 155-56.

At oral argument, Appellants' attorney argued that *McCall* held that a sudden medical emergency could no longer be used as a defense to a negligence claim. We deduce that this argument stems from the final paragraphs in the *McCall* opinion, where the Court explained that the "sudden emergency doctrine" was subsumed into Tennessee's comparative fault scheme in *Eaton v. McLain*, 891 S.W.2d 587, 592 (Tenn. 1995). In so arguing, Appellants overlook that the sudden emergency doctrine is distinguishable from the sudden physical incapacitation doctrine, *i.e.,* a sudden loss of consciousness or physical capacity, which the *McCall* Court intended to adopt.[2] Regarding the sudden emergency doctrine, the *McCall* Court stated that it "recognizes that a person confronted with a sudden or unexpected emergency which calls for immediate action is not expected to exercise the same accuracy of judgment as one acting under normal circumstances who has time for reflection and thought before acting." *McCall*, 913 S.W.2d at 157. This is distinguishable from the rule discussed, *supra*, where a person suddenly *loses consciousness or physical capacity*. *Id.* at 155. Under such circumstances, it is likely that a person *cannot* take immediate action as he or she is physically unable to do so due to a medical emergency. It is clear to this Court that *McCall* established a sudden physical incapacitation rule, which *could* be used as a defense in a negligence action. Indeed, this Court has applied the rule in cases following *McCall*. *See generally Boshears v. Brooks*, No. E2015-01915-COA-R3-CV, 2016 WL 3704487 (Tenn. Ct. App. July 6, 2016); *Smith v. Gen. Tire*, No. M2012-01446-COA-R3-CV, 2013 WL 2395047 (Tenn. Ct. App. May 30, 2013); *Schwandner v. Higdon*, No. M2010-00910-COA-R3-CV, 2011 WL 1630982 (Tenn. Ct. App. Apr. 26, 2011), *perm. app. denied* (Tenn. Aug. 25, 2011); *Beasley v. Amburgy*, 70 S.W.3d 74 (Tenn. Ct. App. 2001), *perm. app. denied* (Tenn. Feb. 11, 2002).

Adhering to the law established in *McCall*, the trial court concluded that Appellees, through Dr. Fredi's affidavit, showed that Mr. Monger suffered a heart attack immediately before the accident, which caused "him to have a sudden loss of consciousness or physical capacity." The trial court also concluded that Appellants failed to provide any admissible evidence to rebut these facts. Turning to the record, Dr. Fredi testified that Mr. Monger's

---

[2] We note that, following *McCall*, some cases from this Court have referred to this doctrine as the "sudden loss of consciousness doctrine." Because the established rule applies to physical incapacitation, which *may* include loss of consciousness, and because the heading immediately preceding the Supreme Court's declaration of this rule is titled "Rule Established in Physical Incapacitation Cases," we refer to it as the "sudden physical incapacitation doctrine."

medical records from the date of the accident demonstrated that Mr. Monger "suffered a significant heart attack on that date." Specifically, Dr. Fredi testified that Mr. Monger "was found to have an elevated troponin level of 5.6, EKG changes with ST elevations in the anterior and lateral leads, and a reduced ejection fraction of 35 to 40%." This resulted in "[a]n emergency cardiac catheterization[,] which revealed [a] 90-95% blockage of the left anterior descending artery, requiring [the] placement of a stent." Dr. Fredi also considered Mr. Monger's deposition testimony that, on the morning of the accident, he remembered preparing to make a left turn when he saw "bright lights," and that Mr. Monger's next memory was "waking up [and] somebody pressing on his chest." Dr. Fredi also considered a video recording of Mr. Monger in his vehicle immediately after the collision that showed him breathing with difficulty. Dr. Fredi opined that the foregoing statements and video were consistent with the later diagnosis of a heart attack.

Given Dr. Fredi's affidavit testimony, the burden shifted to Appellants to show that, at the time of the accident, Mr. Monger did not suffer a sudden loss of consciousness or physical capacity. As discussed above, Appellants attached the following exhibits to their response to the motion for summary judgment: (1) Mr. Monger's "prehospital" medical records (it appears these records were from the EMTs that responded to the accident) from the date of the accident; (2) Mr. Monger's discharge documentation from the hospital on the same date; and (3) a collective exhibit of various online articles concerning high blood pressure, diabetes, heart disease, and stroke. Appellants presented no evidence from a medical expert to dispute Dr. Fredi's testimony. In their response to the motion for summary judgment and in this appeal, Appellants argue that there are genuine issues of material fact concerning whether Mr. Monger: (1) lost consciousness; and (2) suffered a heart attack at the time of the accident.[3] The crux of Appellants' argument appears to hinge on the fact that Mr. Monger extricated himself from the van and onto a stretcher, and that Mr. Monger testified in his deposition that he could not recall whether he lost consciousness. As an initial matter, even if Mr. Monger did not lose consciousness, the sudden physical incapacitation rule would still apply if he experienced a sudden loss of *physical capacity*, such as that which might be caused by a heart attack. Indeed, unconsciousness is not a prerequisite to the sudden physical incapacitation defense. Additionally, although Mr. Monger testified that he could not recall whether he lost consciousness, his other deposition testimony indicates that he likely did. Specifically, Mr. Monger testified that he saw bright lights and then *awoke* to somebody pressing on his chest in the van, surrounded by smoke, with the dashboard of the van over him. When asked if Mr. Monger saw a collision between his vehicle and the other vehicle, Mr. Monger testified "No." Appellants presented no evidence to dispute Mr. Monger's testimony. Furthermore, the fact that Mr. Monger was able to transfer himself from the van onto the stretcher after the accident is insufficient to rebut Appellees' evidence that Mr. Monger suffered a heart attack, which caused him to become physically incapacitated, immediately

---

[3] Appellants admit that Mr. Monger suffered a heart attack the day of the accident. The dispute lies in the time of day the heart attack occurred.

before the accident.

Having concluded that the evidence showed that Mr. Monger suffered a heart attack and was physically incapacitated immediately preceding the accident, the trial court considered whether Mr. Monger's sudden loss of consciousness or physical capacity to control the vehicle was reasonably foreseeable to a prudent person. *McCall*, 913 S.W.2d at 156. Again, the trial court turned to Dr. Fredi's affidavit. Dr. Fredi testified:

> ***The records of Mr. Monger pre-dating the accident show no diagnoses of a heart condition***. Mr. Monger presented to Methodist Hospital-Olive Branch on April 2, 2021, complaining of dizziness and lightheadedness with no chest pain, palpitations or shortness of breath. He reported a history of diabetes and hypertension. He was diagnosed with dizziness and was discharged the same day with a prescription for meclizine (an antihistamine). On May 11, 2021, Mr. Monger presented to Marshall County Urgent Care complaining of weakness, fatigue, shortness of breath, headaches, cough, dizziness and congestion. He was diagnosed with a virus and was given injections of a steroid and antibiotic. COVID-19 tests were performed, sent to the lab and came back negative. ***Nothing in these pre-accident records reveals any information that should have alerted Mr. Monger to an imminent threat of a heart attack***. Further, diabetics can have a blunted warning system for cardiac issues and may experience non-classic symptoms that aren't typically recognized related to the heart. In retrospect, the symptoms reported by Monger on April 2 and May 11, 2021, may have been related to the blockage later found in the cardiac artery, ***but there is no indication that [Mr.] Monger or the medical professionals treating him on those dates knew or should have known about the blockage***.

(Emphases added). *See* ***id.*** Additionally, Mr. Monger testified that he had never been diagnosed with a heart condition and had never been told that he was at risk to experience heart problems. *See* ***id.*** Mr. Monger also testified that he had never experienced a similar incident of loss of consciousness or physical incapacity in the past. *See* ***id.*** The foregoing summary judgment evidence showed that neither Mr. Monger's heart attack nor his physical incapacity was reasonably foreseeable. Accordingly, the burden shifted to Appellants to prove otherwise.

In response, Appellants alleged that: (1) Mr. Monger failed to take his hypertension medications on the day of the accident; and (2) Mr. Monger was put on notice of a potential heart attack because he was dizzy and he failed to manage his diabetes. Appellants also stated that they "expect that an expert will opine that Mr. Monger's failure to take his hypertension medication and his mismanaged diabetes put him at greater risk of having a heart attack." As an initial matter, the record does not show that Mr. Monger failed to take

his hypertension medication the day of the accident.  On review of Mr. Monger's deposition, there was confusion surrounding which medication counsel was discussing when asking Mr. Monger about the medication he took the day of the accident.  In his affidavit, Mr. Monger clarified that, at the time of the accident, he had been prescribed only one high blood pressure medication—Losartan—and that he took it every morning as prescribed, including on the day of the accident.  Similarly, there is no evidence to show that Mr. Monger failed to manage his diabetes.  Rather, Mr. Monger testified that he was being treated for diabetes with Metformin and that he took that medication before the accident.  Although Appellants allege in their appellate brief that Mr. Monger failed to manage his diabetes, they provide no record citation for this allegation.  Furthermore, Appellants' assertion that they *expected* to call an expert to testify to Mr. Monger's risk of a heart attack does not constitute actual evidence sufficient to rebut Dr. Fredi's testimony.  Furthermore, if Appellants planned to use an expert to contradict Appellees' expert's proof, they were obligated to present such evidence in response to Appellees' motion for summary judgment.  *See Rye*, 477 S.W.3d at 265 ("[T]o survive summary judgment, the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'") (internal citations omitted).  In short, Appellants failed to provide any admissible evidence to rebut Appellees' evidence that Mr. Monger's heart attack was not reasonably foreseeable.

We conclude that the summary judgment evidence showed that, immediately preceding the accident, Mr. Monger suffered an unforeseeable heart attack that left him physically incapacitated.  As such, the sudden physical incapacitation doctrine provides Appellees a defense to Appellants' negligence claim.  Accordingly, we affirm the trial court's grant of Appellees' motion for summary judgment and its dismissal of Appellants' claims.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order.  The case is remanded for such further proceedings as may be necessary and are consistent with this opinion.  Costs of the appeal are assessed to the Appellants, Ajalon Elliott and Freddrick Hurt.  Execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE